**In re Curtis Dale DEWEY, also known as Curtis D. Dewey, Debtor.**

**Curtis Dale DEWEY, Appellant,**

v.

**Doris DEWEY, Appellee.**

BAP No. WY–97–095.
Bankruptcy No. 97–21166.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Sept. 3, 1998.

Georg Jensen, Cheyenne, WY, for Appellant.

Franklin D. Bayless, Bayless & Slater Law Firm, P.C., Cheyenne, WY, for Appellee.

Before McFEELEY, Chief Judge, BOHANON, and BOULDEN, Bankruptcy Judges.

## OPINION

BOULDEN, Bankruptcy Judge.

Curtis Dale Dewey (Debtor) appeals an order in which the bankruptcy court sustained an objection filed by Doris Dewey, the Debtor's former spouse (Dewey), to the confirmation of the Debtor's Chapter 13 plan. The bankruptcy court determined that certain cosigned debts the Debtor was ordered to pay under the parties' divorce decree created a contingent claim on Dewey's behalf that was entitled to priority, and that the Debtor's Chapter 13 plan failed to provide payment of Dewey's priority claim under 11 U.S.C. § 507(a)(7)[1] as required by § 1322(a)(2). For the reasons set forth herein, the bankruptcy court is AFFIRMED.

## I. *Background*

On February 19, 1997, the Debtor and Dewey filed a Property Settlement Agreement (Agreement) in Wyoming state court. The Agreement states, in relevant part, that:

> **WHEREAS**, . . . it is the desire of both to finally and for all time settle, adjust, compromise and determine their property rights, all right of support and maintenance by either party against the other . . . , [and] alimony.

---

1. Unless otherwise stated, all statutory references herein are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

. . . .

5. It is agreed that the Husband [Debtor] shall be solely and individually responsible for, and hold the Wife harmless from, any and all debts in his name as set forth in Exhibit A attached hereto and incorporated herein by reference.

6. The Wife shall be solely and individually responsible for, and hold the Husband harmless from, any and all debts in her name as set forth in Exhibit B attached hereto and incorporated herein by reference.

. . . .

14. Each of the parties receives the property set apart to them and the undertakings hereof in full and complete settlement and release of all claims and demands of every kind, name or nature against the other party hereto, including all liability now or at any time hereafter existing or accruing on account of support, maintenance, alimony, ... either statutory or arising at common law, incident to the marriage relation, and after this settlement the Husband and Wife shall require nothing whatever of the other except as herein provided.

Exhibit A to the Agreement, titled "Husband's Liabilities," itemizes seventeen debts for which the Debtor is responsible under ¶ 5 of the Agreement, exceeding $119,000 (Husband's Debts).[2] Exhibit B to the Agreement, titled "Wife's Liabilities," itemizes one credit card debt for $50 for which Dewey is responsible under ¶ 6 of the Agreement. The Agreement does not provide for monthly alimony or support payments to Dewey. On March 14, 1997, the state court entered a Decree of Divorce that essentially copies the terms of the above-described Agreement.

After the Decree of Divorce was entered in the state court, the Debtor filed for protec-tion under Chapter 13. The Debtor listed Dewey in Schedule H of his bankruptcy schedules as a codebtor on seven debts, six of which are listed as Husband's Debts in the Agreement and Decree of Divorce. The Debtor thereafter submitted a Chapter 13 plan to which Dewey objected, among other reasons, because it did not propose to pay her contingent claim arising under ¶ 5 of the Agreement as a priority claim as required under § 1322(a)(2).

The bankruptcy court heard extensive testimony from the Debtor and Dewey regarding the nature of the Husband's Debts at the hearing on the confirmation of the Debtor's proposed plan.[3] Dewey testified that she agreed to the Debtor's payment of the Husband's Debts in lieu of support because she did not have the means to pay them. If she had known that the Debtor would not pay the Husband's Debts, she would have asked for maintenance payments. The bankruptcy court also stated in its ruling that the evidence showed that Dewey suffered a stroke before the parties were divorced. Dewey is retired and receives $560 per month for retirement pay and $100 income from investments. Her early retirement money will end when she turns 62 (at the time of the hearing she was 60). The Debtor, on the other hand, has consistently earned about $2,700 per month. It was uncontroverted that a large portion of the Husband's Debts attributable to credit card debt were purchases and cash advances made by the Debtor for his benefit. The Debtor still owns portions of the property purchased with the credit cards.

After the confirmation hearing, the bankruptcy court issued an "Order on Objection to Confirmation of Chapter 13 Plan" (Order) sustaining Dewey's objection and denying confirmation of the Debtor's plan without prejudice. In the Order, the bankruptcy court determined that Dewey's claim against

---

2. Some of the Husband's Debts listed on Exhibit A to the Agreement are clearly owed to credit card issuers. However, the nature of some of the Husband's Debts is not clear, and some of the obligations are clearly non-credit card debt associated with the former couple's home, car, and utilities. Nothing in Exhibit A indicates the purpose of the underlying charges that constitute the credit card debt.

3. The Debtor originally filed only a partial transcript of this hearing with this Court. He thereafter filed a motion to supplement his Appendix to include the entire transcript. Dewey has not objected to this motion and, therefore, it is granted.

the Debtor was entitled to priority under § 507(a)(7),[4] and that the Debtor's plan was not adequate under § 1322(a)(2) because it did not provide for the priority claim. This appeal followed. The only issue on appeal is whether the bankruptcy court erred in determining that the Husband's Debts were support and thus entitled to priority under § 507(a)(7).

## II. Appellate Jurisdiction

This Court, with the consent of the parties, has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002. Upon leave of court, the Court also has jurisdiction to hear appeals from interlocutory orders. 28 U.S.C. § 158(a)(3), (b)(1), and (c)(1).

The Debtor timely filed a notice of appeal from the bankruptcy court's Order, and the parties have consented to this Court's jurisdiction in that they have not opted to have ·the appeal heard by the United States District Court for the District of Wyoming. *Id.* at § 158(c); Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

■ The only issue concerning our jurisdiction is whether the Order appealed denying confirmation of a Chapter 13 plan is "final." [5] Typically, such orders are considered to be nonreviewable interlocutory orders. *See Simons v. FDIC (In re Simons)*, 908 F.2d 643 (10th Cir.1990) (per curiam). However, we have been informed by the parties that subsequent to the entry of the Order the Debtor amended his plan to provide for Dewey's priority claim, to the extent that such claim is a held to be a priority claim on appeal, and the bankruptcy court has entered an order confirming the Debtor's amended chapter 13 plan. This subsequent confirmation order renders the Order "final" for purposes of § 158(a)(1). *See, e.g., Lewis v. B.F. Goodrich Co.*, 850 F.2d 641 (10th

Cir.1988) (en banc) (a premature notice of appeal filed from a non-final judgment may ripen upon entry of a subsequent final judgment, provided that the appellate court has not yet dismissed the appeal for lack of jurisdiction); *In re Hatcher*, 208 B.R. 959, 966 (10th Cir. BAP 1997), *aff'd without opinion*, 133 F.3d 932 (10th Cir.1998). Thus, the bankruptcy court's Order ends the dispute between the parties on the merits and is a "final" judgment, subject to appeal under § 158(a)(1). *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

## III. Discussion

■ Section 507(a)(7) of the Bankruptcy Code provides:

(a) The following expenses and claims have priority in the following order:

. . . .

(7) Seventh, allowed claims for debts to a ... former spouse ... of the debtor, for alimony to, maintenance for, or support of such spouse ..., in connection with a ... divorce decree ... determination made in accordance with State ... law by a governmental unit, or property settlement agreement, but not to the extent that such debt—

. . .

(B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.

11 U.S.C. § 507(a)(7). There are no published Tenth Circuit opinions interpreting this provision, which was added to the Bankruptcy Code in 1994. However, the language in § 507(a)(7) mirrors that of § 523(a)(5), which governs the dischargeability of spousal support debts.[6] "Support" under § 523(a)(5) has

---

**4.** The bankruptcy court expressly stated that it was not making a determination under § 523(a)(5). Appellant's Appendix, Order, p. 2.

**5.** An Order to Show Cause Why Appeal Should Not be Considered for Dismissal as Interlocutory was issued by this Court, responded to by the

parties and ultimately referred to this panel for disposition. The issue is resolved by this ruling.

**6.** Section 523(a)(5) states, in relevant part, that:

been defined by the Tenth Circuit in numerous decisions and, given the similarity of the language of §§ 507(a)(7) and 523(a)(5) and their purpose, the definition developed under § 523(a)(5) should have equal effect under § 507(a)(7). *See Cohen v. de la Cruz*, — U.S. —, —, 118 S.Ct. 1212, 1217, 140 L.Ed.2d 341 (1998) (equivalent words are presumed to have the same meaning when repeated in a statute); *U.S. Nat'l Bank v. Independent Ins. Agents of Am., Inc.*, 508 U.S. 439, 460, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (presumptively, identical words used in different parts of same act are intended to have the same meaning).

■ It is well-settled that the issue of whether an obligation is support is a factual question subject to the clearly erroneous standard of review. *Young v. Young (In re Young)*, 35 F.3d 499, 500 (10th Cir.1994); *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 721 (10th Cir.1993); *Goin v. Rives (In re Goin)*, 808 F.2d 1391, 1393 (10th Cir. 1987) (per curiam); *Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 877 (10th Cir.1986); *White v. Bell (In re White)*, 212 B.R. 979, 984 (10th Cir.BAP1997). Whether a debt is support is an issue of federal law. *Jones v. Jones (In re Jones)*, 9 F.3d 878, 880 (10th Cir.1993); *Sampson*, 997 F.2d at 721; *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir.1989) (per curiam); *Goin*, 808 F.2d at 1392; *Yeates*, 807 F.2d at 877. "State law does not provide guidance as to whether a debt is to be considered in the 'nature of support.'" *Jones*, 9 F.3d at 880 (quoting *Yeates*, 807 F.2d at 878). "[A] debt could be in the 'nature of support' under section 523(a)(5) [and thus under § 507(a)(7) ] even though it would not legally qualify as alimony or support under state law." *Yeates*, 807 F.2d at 878, *quoted in Jones*, 9 F.3d at 880; *see Sampson*, 997 F.2d at 721 ("[A] debtor's lack of duty under state law to support his or her former spouse does not control whether

an obligation to the former spouse is dischargeable in bankruptcy."). The term "support" is to be read broadly and in a realistic manner. *Miller v. Gentry (In re Miller)*, 55 F.3d 1487, 1489–90 (10th Cir.1995), *cert. denied*, 516 U.S. 916, 116 S.Ct. 305, 133 L.Ed.2d 210 (1995); *Jones*, 9 F.3d at 881. It is the nature of the debt owed, not the identity of the payee, that governs whether a debt is support. *Id.* Thus, in both *Miller* and *Jones*, the debt in question was to be paid to a third party, but was nevertheless held to be support.

■ In *Sampson*, the Tenth Circuit set forth a two-part test to determine whether a debt is support:

> First, the court must divine the spouses' shared intent as to the nature of the payment. This inquiry is not limited to the words of the settlement agreement, even if unambiguous. Indeed, the bankruptcy court is required to look behind the words and labels of the agreement in resolving this issue. Second, if the court decides that the payment was intended as support, it must then determine that the substance of the payment was in the nature of support at the time of the divorce—*i.e.*, whether the surrounding facts and circumstances, especially financial, lend support to such a finding.

*Young*, 35 F.3d at 500 (citations omitted) (discussing *Sampson*, 997 F.2d at 722–23). In considering the second part of the *Sampson* test, "the relative financial circumstances of the parties at the time of the divorce[ ]" are "extremely relevant." *Sampson*, 997 F.2d at 726 and n. 7; *see Sylvester*, 865 F.2d at 1166; *Goin*, 808 F.2d at 1393; *Yeates*, 807 F.2d at 879. In fact, in *Sampson*, the court stated "a spouse's need for support at the time of the divorce is sufficient to presume that the parties' intended the obligation as support." 997 F.2d at 726 n. 7. It is also

---

(a) A discharge under section . . . 1328(b) of this title does not discharge an individual debtor from any debt—

> . . .

(5) to a . . . former spouse . . . of the debtor, for alimony to, maintenance for, or support of such spouse . . . in connection with a . . . divorce decree . . ., determination made in accordance with State or territorial law by a

governmental unit, or property settlement agreement, but not to the extent that—

> . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

11 U.S.C. § 523(a)(5).

relevant if the debts imposed on the debtor-spouse are in return for a relinquishment of any rights for support. *Sylvester*, 865 F.2d at 1166.

In *Yeates*, the Tenth Circuit held that a debtor's obligation to make payments on a joint debt incurred by the debtor and his former spouse were support. The court quoted the following legislative history to § 523(a)(5):

> This provision will . . . make nondischargeable any debts resulting from an agreement by the debtor to *hold the debtor's spouse harmless on joint debts*, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.

*Yeates*, 807 F.2d at 877 (quoting H.R.Rep. No. 595, 95th Cong., 2d Sess. 364) (emphasis added). This history makes clear that payments on joint debts may be considered to be "support."

■ The bankruptcy court in this case correctly applied the *Sampson* test. First it looked to the intent of the parties, and then it looked at all of the circumstances of the case to determine that the Debtor's assumption of the Husband's Debts was support. As required under the above-cited Tenth Circuit law, the bankruptcy court, in examining the circumstances of the case, paid special attention to the relative financial standing of the parties at the time the Agreement was executed and the Decree of Divorce was entered. It is also relevant that Dewey relinquished any right to support under ¶ 14 of the Agreement and under the Decree of Divorce because of the Debtor's agreement to pay the couple's joint debts. *Sampson*, 997

F.2d at 726 and n. 7; *Sylvester*, 865 F.2d at 1166; *Goin*, 808 F.2d at 1393; *Yeates*, 807 F.2d at 879.[7] It is not relevant that the Husband's Debts were to be paid to third-party creditors and not Dewey. *Miller*, 55 F.3d at 1487; *Jones*, 9 F.3d at 878. Thus, its finding that the Husband's Debts were support is not clearly erroneous.

■ The Debtor argues that the Husband's Debts cannot be support as a matter of law because such Debts are attributable to credit card purchases that in no way added to Dewey's support. According to the Debtor, since a majority of the items purchased with the credit cards were for goods and services unrelated to support, such as to purchase computer-related items,[8] the debt cannot be considered to be "support." We reject this argument. As noted above, the Tenth Circuit has stated that "support" is to be interpreted broadly, and that "[t]he critical question in determining whether the obligation is, in substance, support is 'the function served by the obligation at the time of the divorce.'" *Sampson*, 997 F.2d at 725–26 (quoting *In re Gianakas*, 917 F.2d 759, 763 (3rd Cir.1990)); *see Jones*, 9 F.3d at 881–82 ("support" is interpreted broadly). This function may be determined by considering the relative financial circumstances of the parties at the time of the divorce, and a former spouse's "need for support at the time of the divorce is sufficient to presume that the parties' intended the obligation as support." *Sampson*, 997 F.2d at 726 n. 7. Here the bankruptcy court found that Dewey was in need of support and that she gave up monthly support payments in return for the Debtor's agreement to pay the joint Husband's Debts. These factual findings are not clearly erroneous. Thus, since the function served by the Debtor's payment of the Hus-

7. The Debtor takes issue with the bankruptcy court's factual findings regarding the parties' respective incomes. Yet, upon review of the entire transcript, we find that the bankruptcy court's findings of fact are fully supported by the record and are not clearly erroneous.

8. The evidence before the bankruptcy court was uncontroverted that the majority of goods and services purchased with the credit cards giving rise to the Husband's Debts were for the Debtor's

benefit. Debtor's counsel argued before this Court that the purchases were for goods and services not related to Dewey's support. The exact nature of each of these purchases, however, is unknown based on the record before us, except that the parties testified that the Debtor used the credit cards for expenses related to bowling trips and to purchase computers and computer-related items, collectibles, and a membership in the National Rifle Association.

band's Debts was to relieve Dewey of any joint obligation on the debts so as to allow her to use her limited income to support herself; it "had the actual effect of providing support to [Dewey]—enabling her to ... have a monthly income." *Sylvester*, 865 F.2d at 1166 (quotation omitted) (quoted in *Sampson*, 997 F.2d at 726); *see Yeates*, 807 F.2d at 879 ("When the agreement is ambiguous, evidence that payment of the debt is necessary in order for the plaintiff to maintain daily necessities such as food, housing and transportation indicates that the parties intended the debt to be in the nature of support.").

 The Debtor also argues that the Tenth Circuit's broad definition of "support" under § 523(a)(5) should be narrowed in light of the addition of §§ 507(a)(7) and 523(a)(15) to the Bankruptcy Code in 1994, because applying the definition reads § 523(a)(15) out of the Code. We take this to be an argument that the analysis under § 523(a)(15), related to a debtor's current ability to pay and the balancing of the consequences of discharge of a property settlement, is in conflict with the Tenth Circuit's two-part analysis to determine if an obligation is support or a property settlement at the time of the divorce. We do not agree. In a Chapter 13 case, the debt described in § 523(a)(15) is not a nondischargeable obligation under § 1328(a)(2), nor is it a priority obligation required to be paid under § 1322(a)(2). The only relevance the existence of § 523(a)(15) debt has in relation to confirmation of a Chapter 13 plan is in the determination of whether the Chapter 13 plan has been proposed in good faith as required by § 1325(a)(3). *Flygare v. Boulden*, 709 F.2d 1344, 1347–48 (10th Cir.1983) (whether the debt is nondischargeable is one of the eleven factors to consider when determining good faith).

The Debtor claims that "much of the evidence provided by [Dewey] and argued by [Dewey] is not admissible as it is an attempt by [Dewey] to controvert the clear and unambiguous language of the agreement and

decree." Appellant's Opening Brief, p. 7. The Debtor does not further articulate this argument or point to the portions of the record to which he objects. Even if he did state with particularity to what he objects, however, his argument is without merit. In *Sampson* and *Young*, both relied on by the bankruptcy court, the Tenth Circuit expressly stated that in making a determination as to the nature of a divorce debt, the bankruptcy court is required to look beyond the language of the Agreement and Decree of Divorce.

 The Debtor maintains that the Decree of Divorce should not be relitigated in the bankruptcy court under principles of collateral estoppel. This argument is without merit under the analysis required under *Sampson*. Furthermore, the priority of the Husband's Debts was not an issue that was raised or should have been raised in the state court divorce proceedings.

 Finally, the Debtor argues that judicial estoppel prohibits Dewey from claiming the Husband's Debts are for support when she agreed to waive support under the Agreement. The Debtor misses the point. The Husband's Debts were found to be support in part because she waived the right to additional support under ¶ 14 of the Agreement and Decree of Divorce.[9] Moreover, "to maintain an estoppel defense, a party 'must ... demonstrate a detrimental change in its position as a result of reasonable reliance on that conduct.'" *Golfland Entertainment Ctrs. v. Peak Inv., Inc. (In re BCD Corp.)*, 119 F.3d 852, 858 (10th Cir.1997) (quoting *Paul v. Monts*, 906 F.2d 1468, 1474 (10th Cir.1990)). The Debtor has not made such a showing in this case.

## IV. *Conclusion*

For the reasons stated above, the bankruptcy court's Order is AFFIRMED.

---

9. Judicial estoppel, which "bars a party from adopting 'inconsistent positions in the same or related litigation,'" is not recognized by the Tenth Circuit except under limited circumstances not relevant here. *Golfland Entertainment Ctrs. v. Peak Inv., Inc. (In re BCD Corp.)*, 119 F.3d 852, 858 (10th Cir.1997).