| Professional | Date | Description | Hours | Amount |
|---|---|---|---|---|
| David M. Feldman | 7/28/99 | further prep for Excl. hearing; deposition outline and affirmative testimony outline; prepare argument; numerous discs. Debtors etc. re potential excl. settlement | 7.20 | $1,944.00 |
| David M. Feldman | 8/20/99 | prep. for conf. call re DIP amendment and exclusivity; participate in call w/cte member; follow-up w/cte members unable to make call; review of amendment terms; discs. Thomas and Christensen re exclusivity issues | 3.50 | $945.00 |
| Thomas M. Mayer | 7/14/99 | Office conference with D. Feldman re objection to exclusivity, review 2nd draft, revise and authorize dispatch; conference calls with D. Feldman, D. Dienst re Dienst's discussions with Rouster, Lawhon, drafting term sheet for a plan of reorganization. | 1.2 | $516.00 |
| Thomas M. Mayer | 8/2/99 | Office conferences D. Feldman, call from J. Markus re developments in court on push of exclusivity, calls with J. Tanenbaum re his request for committee proxy on Solomon retention, review Solomon pleading, approve filing with revisions. | 1.00 | $430.00 |
| Fransesca Sena | 6/3/99 | Research to update caselaw regarding fraudulent conveyance analysis. Drafted inserts to be included in analysis memo. O/c with D. Feldman re: status and issues re: same. | 9.8 | $1,960.00 |

**In re Richard Charles POLISHUK, Debtor.**

**Nancy Polishuk, Plaintiff,**

**v.**

**Richard Charles Polishuk, Defendant.**

**Bankruptcy No. 98–02320M.**
**Adversary No. 98–0260–M.**

United States Bankruptcy Court,
N.D. Oklahoma.

Aug. 24, 1999.

Robert A. Todd, Tulsa, OK, for plaintiff.

M. Shawn Lawhorn, Tulsa, OK, for defendant.

## *MEMORANDUM OPINION*

TERRENCE L. MICHAEL, Chief Judge.

THIS MATTER came before the Court for trial on August 11, 1999. Plaintiff Nancy Polishuk ("Plaintiff" or "Ms. Polishuk") appeared personally and through her attorney, Robert A. Todd. Defendant Richard A. Polishuk ("Defendant" or "Mr. Polishuk") appeared by and through his attorney, M. Shawn Lawhorn. The Court received evidence and heard argument from the parties. The Court also considered the facts stipulated to by the parties in the Pre–Trial Order filed in this action on June 22, 1999. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

### Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).[1] Reference to the Court of this adversary proceeding is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(B) & (I).

### Burden of Proof

The United States Court of Appeals for the Tenth Circuit has ruled that

> Exceptions to discharge are to be narrowly construed, so as to effect the "fresh start" purpose of bankruptcy. *Jones*, 9 F.3d at 880. The policy under-

---

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (West 1999).

lying § 523(a)(5), however, favors enforcement of familial support obligations over a "fresh start" for the debtor. *Sampson v. Sampson (In re Sampson),* 997 F.2d 717, 722 (10th Cir.1993). "Further, the objector to discharge has the burden of proving by a preponderance of the evidence that a debt is not dischargeable." *Jones,* 9 F.3d at 880.

*See In re Miller,* 55 F.3d 1487, 1489 (10th Cir.1995), *cert. denied* 516 U.S. 916, 116 S.Ct. 305, 133 L.Ed.2d 210 (1995). Accordingly, the burden of proof in this adversary proceeding falls upon the Plaintiff.

## Findings of Fact

Plaintiff and Defendant were married on December 24, 1972, in Tulsa, Oklahoma. In May of 1997, Ms. Polishuk filed an action for divorce (the "Divorce Action") in the District Court in and for Tulsa County, Oklahoma (the "State Court"). The Divorce Action was hotly contested, and, after a four day trial, the State Court entered its *Nunc Pro Tunc* Journal Entry of Judgment and Decree of Divorce (the "Divorce Decree") on August 10, 1998.[2] In the Divorce Decree, the State Court ordered Mr. Polishuk to hold Ms. Polishuk harmless from certain credit card obligations. Later, in a separate order, the State Court entered judgment against Mr. Polishuk and in favor of Ms. Polishuk in the amount of $44,909.78, which represented an award of her attorneys' fees and costs incurred in the Divorce Action.

At the time it entered the Divorce Decree, the State Court had before it Plaintiff's "Pretrial Financial Declaration" (the "Declaration") which set forth the income and expenses of the Plaintiff at the time of trial of the Divorce Action. *See Plaintiff's Exhibit 1.* According to the Declaration, Plaintiff had an annual gross income of $82,531.80,[3] or monthly gross income of $6,877.65. After deductions for federal income tax, state income tax, Social Security withholding and Medicare withholding, Plaintiff had net monthly income of $4,864.75. Ms. Polishuk's monthly expenses at the time were $9,948.99.[4] The Declaration indicated a monthly shortfall of income versus expenses of $5,084.24.

With respect to the credit card obligations in dispute (hereafter referred to as the "Credit Card Debt"), the State Court made the following findings and conclusions:

28. At or about the time of filing the Petition for Divorce, Plaintiff and Defendant had marital debts to numerous credit card companies. The parties are jointly and severally liable on the following credit card debts which had the following balances at the time the Petition was filed:

A. American Express # 3728–067643–33001 (Sign & Travel and Richard Polishuk) (Charges on Nancy's card # 3728–067643–32011 may also be posted to the Sign & Travel Account) $6,370.63

B. Chase MasterCard # 5422–4329–0002–1696 (now # 5422–4329–2800–1357) $12,065.35

C. Ford CitiBank MasterCard # 5410–6540–7492–1815 $3,839.81

2. Mr. Polishuk filed his bankruptcy case as a Chapter 11 bankruptcy on June 12, 1998, the eve of trial of the Divorce Action, and also attempted to remove the Divorce Action to this Court. *See Adv.Proc. No. 98–0179–M, Docket No. 1.* This Court immediately remanded the Divorce Action to the State Court. *See Adv.Proc. No. 98–0179–M, Docket No. 2.* This case was converted to a case under Chapter 13 of the United States Bankruptcy Code by order entered on March 3, 1999. *See Docket No. 93.*

3. Of that income, $25,000.00 represented a loan from her employer which was subject to repayment at a later date.

4. This amount did not include any payments on the Credit Card Debt, but did include a monthly payment of $2,000.00 to her attorney in the Divorce Action, and a monthly payment of $1,210.00 on installment (credit card) debt which Ms. Polishuk acknowledged was hers to pay. *See Plaintiff's Exhibit 1.*

D. CitiBank Business Card # 5472–3301–0727–4598 $4,338.33

E. Nation's Bank # 5342–0800–1469–3251 $4,108.57

29. The Court finds that Defendant took possession of Plaintiff's American Express Card # 3728–067643–32011 from Plaintiff's purse without her permission at about the time of the filing the Petition for Divorce was filed, and Defendant added to the charges on this account, but made no payments, post petition. The Court finds that not only is it equitable for Defendant to be ordered to pay this debt and hold Plaintiff harmless, it is also necessary for that [sic] the hold harmless obligation be considered a support obligation owed to Plaintiff, the minor child in her custody, and the adult child Plaintiff is supporting during school. Furthermore the Court finds that it would not be equitable for Defendant to be permitted by the bankruptcy Court to allow Defendant to discharge the hold harmless obligation in bankruptcy, but that decision is solely for the Bankruptcy Judge to make. Defendant acted inequitably by taking the credit card wrongfully from Plaintiff's purse and using it to incur charges post petition. His hands are unclean. If Defendant is permitted to discharge this debt, it will cause detrimental consequences to Plaintiff and the children she is supporting.

30. The Court finds the Plaintiff has assumed the obligation of the Chase MasterCard # 5422–4329–0002–1696 (now # 5422–4329–2800–1357), and that debt should be awarded to Plaintiff.

31. The Court finds that Defendant is the only party who had possession of the Ford CitiBank MasterCard # 5410–6540–7492–1815. All of the charges on this card were made by Defendant. At the time the Petition was filed, the balance was only, $3,839.81. The evidence is clear from both Plaintiff's Exhibits 35 and 37 that Defendant began using this card immediately after the Petition was filed at which time there was over $5,100.00 of available credit left on the card. By the time Plaintiff discovered that this card existed in her name and was able to close it, Defendant used up all the credit and ran the balance over. $8,550.00. Defendant used this credit card post petition for trips that Plaintiff did not go on, for his own food and gasoline, for his own cellular telephone, his own dry cleaning and laundry. His total post petition charges on this card were more than $5,354.00.

32. The Court finds that not only is it equitable for Defendant to be ordered to pay the Ford CitiBank MasterCard # 5410–6540–7492–1815 indebtedness and hold Plaintiff harmless, it is also necessary for that [sic] the hold harmless obligation be considered a support obligation owed to Plaintiff, the minor child in her custody, and the adult child Plaintiff is supporting during school. Furthermore the Court finds that it would not be equitable for Defendant to be permitted by the bankruptcy Court to allow Defendant to discharge the hold harmless obligation in bankruptcy, but that decision is solely for the Bankruptcy Judge to make. Defendant acted inequitably by secretly using post petition a credit card on which Plaintiff was liable and using it to incur nearly double the pre petition charges, and his hands are unclean. If Defendant is permitted to discharge this debt, it will cause detrimental consequences to Plaintiff and the children she is supporting.

33. The Court finds that Defendant is the only one who had possession of the CitiBank Business Card # 5472–3301–0727–4598. At the time the Petition was filed, this card had a balance of $4,338.33. Prior to the filing of the Petition, this account had been abused by Defendant as a tool of asset dissipation. It is clear from Plaintiff's Exhibit "37" that just in the short period from February 1993 to August 1997, Defendant dissipated over $3,637.00 on cigars, just on this credit card. He also used this card to finance cash advances and gambling expenses. It was clear from Plaintiff's Exhibits "36" and "37" that by the time Plaintiff could get this card closed, Defendant had added more than another $1,000.00 of debt to this card, post petition, and the balance as of the end of December 1997 was over $5,380.00.

34. The Court finds that not only is it equitable for Defendant to be ordered to pay the CitiBank Business Card # 5472–3301–0727–4598 indebtedness and hold Plaintiff harmless, it is also necessary for that [sic] the hold harmless obligation be considered a support obligation owed to Plaintiff, the minor child in her custody, and the adult child Plaintiff is supporting during school. Furthermore the Court finds that it would not be equitable for Defendant to be permitted by the bankruptcy Court to allow Defendant to discharge the hold harmless obligation in bankruptcy, but that decision is solely for the Bankruptcy Judge to make. Defendant acted inequitably by secretly using this card during coverture and post petition for extravagant self indulgences and incurring his own post petition charges on a card Plaintiff on which is jointly liable, and his hands are unclean. If Defendant is permitted to discharge this debt it will cause detrimental consequences to Plaintiff and the children she is supporting.

35. The Court finds that Defendant is the only party who had possession of the Nation's Bank # 5342–0800–1469–3251. All of the charges on this card were made by Defendant. At the time the petition was filed, the balance was only, [sic] $4,108.57. The evidence is clear from Plaintiff's Exhibit "49" that Defendant began using this card immediately after the Petition was filed at which time there was over $1,700.00 of available credit left on the card. Defendant used up all the credit post petition, charging more than another $1,600.00. Defendant used this credit card post petition for gambling activities at Fair Meadows Race Track, booze, restaurant dining that costs more than $100.00 a meal, taking his girlfriend to Tulsa Zoo Friend's black tie fund raising event, *Waltz on the Wild Side*, buying his girl friend Kay Gizzi, jewelry at Moody's Jewelry and traveling to Boca Raton, Florida.

36. The Court finds that not only is it equitable for Defendant to be ordered to pay the Nations Bank Card # 5342–0800–1469–3251 indebtedness and hold Plaintiff harmless, it is also necessary for that .[sic] the hold harmless obligation be considered a support obligation owed to Plaintiff, the minor child in her custody, and the adult child Plaintiff is supporting during school. Furthermore the Court finds that it would not be equitable for Defendant to be permitted by the bankruptcy Court to allow Defendant to discharge the hold harmless obligation in bankruptcy, but that decision is solely for the Bankruptcy Judge to make. Defendant acted inequitably by se-

cretly using this card during coverture and post petition for extravagant self indulgences and incurring his own post petition charges on a card Plaintiff on which is jointly liable, and his hands are unclean. If Defendant is permitted to discharge this debt, it will cause detrimental consequences to Plaintiff and the children she is supporting. *See Plaintiff's Exhibit 2.*[5] After ordering Mr. Polishuk to pay the Credit Card Debt and to hold Ms. Polishuk harmless from the same, the State Court ordered Mr. Polishuk to pay child support for the parties' minor child in the amount of $375.00 per month, together with "40% of all reasonable and necessary medical, dental, orthodontic, optometrical, psychological or any other physical or mental health expenses of the child not reimbursed by insurance." *See Plaintiff's Exhibit 2, p. 16.* The State Court declined to award alimony to either party.[6] Ms. Polishuk testified that, at the time the Divorce Decree was entered, and at the time of trial of this action, she and her children would suffer significant financial hardship if she were forced to repay the Credit Card Debt.

The Divorce Decree specifically reserved for later decision the issue of whether either party should be awarded attorneys' fees. On August 7, 1998, Plaintiff moved the State Court for an award of her attorneys' fees incurred in the Divorce Action. Plaintiff sought the sum of $53,-169.28, and provided the State Court with supporting documentation itemizing the fees and expenses incurred. *See Plaintiff's Exhibit 3.* On or about September 3, 1998, the State Court entered a judgment (the "Fee Award") against Mr. Polishuk and in favor of Ms. Polishuk for her attorneys' fees and costs in the amount of $44,-909.78.[7]

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

### Conclusions of Law

The parties have asked this Court to determine two separate but parallel issues: whether the Credit Card Debt and/or the Fee Award may be discharged in this bankruptcy case under the provisions of § 523(a)(5),[8] and whether the

---

5. In closing argument, counsel for the Defendant argued that these findings and conclusions were placed in the Divorce Decree by counsel for the Plaintiff for the purpose of bolstering their position regarding non-dischargeability in this Court, and that the Court should discount their significance. The Court declines to do so. There is no evidence in the record as to how the Divorce Decree was prepared. However, it is undisputed that the Divorce Decree was entered after a four day trial, and was signed by the judge in the State Court who presided over the Divorce Action. This Court presumes that the State Court judge meant every word in the Divorce Decree when he signed it, regardless of who may have prepared it. The Court also notes that the form of the Divorce Decree was approved by both Plaintiff and Defendant, through counsel.

6. The record is unclear as to whether Ms. Polishuk sought alimony from Mr. Polishuk. Mr. Polishuk sought alimony from Ms. Polishuk. The State Court denied the request.

7. The reasoning of the State Court in awarding Ms. Polishuk an amount less than the amount sought was not made a part of the record in this Court.

8. Section 523(a)(5) provides that

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned

Credit Card Debt and/or the Fee Award are entitled to priority status under § 507(a)(7).[9] In order to address both of these issues, the Court must answer the same question; namely whether the Credit Card Debt and/or the Fee Award constitute "alimony to, maintenance for, or support of" Ms. Polishuk or the minor child of Mr. Polishuk and Ms. Polishuk.[10] Because the operative language of § 507(a)(7) and § 523(a)(5) is substantially identical, cases dealing with non-dischargeability under § 523(a)(5) may be used to determine priority under § 507(a)(7). *See Dewey v. Dewey (In re Dewey),* 223 B.R. 559, 563 (10th Cir. BAP 1998) (hereafter *"Dewey"*); *see also Beaupied v. Doe (In re Doe),* 193 B.R. 12, 15–16 (Bankr.N.D.Cal.1996); *see also In re Grady,* 180 B.R. 461, 464 (Bankr.E.D.Va.1995). The questions of non-dischargeability and priority of alimony, maintenance and support are questions of federal, not state, law, although a bankruptcy court may look to state law for guidance on these issues. *See Jones v. Jones (In re Jones),* 9 F.3d 878, 880 (10th Cir.1993).

*The Rooker–Feldman Doctrine*

■■■ Plaintiff argues that this Court is precluded from considering whether the Credit Card Debt constitutes support as a result of the language contained in the Divorce Decree under the principle commonly known as the *"Rooker–Feldman"*

doctrine. This Court has previously set out the following explanation of the *Rooker–Feldman* Doctrine:

Under the *Rooker–Feldman* doctrine,

... lower federal courts lack jurisdictional authority to sit in appellate review of state court decisions. In a nutshell, the doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments.

*In re Reitnauer,* 152 F.3d 341, 343 (5th Cir.1998) (footnotes omitted); *see also In re Goetzman,* 91 F.3d 1173, 1177 (8th Cir.1996). Our Court of Appeals has held that

The *Rooker–Feldman* doctrine bars "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy,* 512 U.S. 997, 1005–06,114 S.Ct. 2647, 129 L.Ed.2d 775 (1994). As a rule, federal review of state court judgments can be obtained only in the United States Supreme Court. *Feldman,* 460 U.S. at 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (citing § 28 U.S.C. § 1257; *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs,* 398 U.S. 281, 296, 90 S.Ct. 1739, 26

---

to the Federal Government or to a State or any political subdivision of such State); or (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

**9.** Section 507(a)(7) provides as follows:

(a) The following expenses and claims have priority in the following order:
. . . .
(7) Seventh, allowed claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with

State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt—
(A) is assigned to another entity, voluntarily, by operation of law, or otherwise; or
(B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.

**10.** In addition to these expenses, the State Court entered judgment against Mr. Polishuk in the amount of $29.70, which sum represented unpaid child support obligations. Mr. Polishuk does not dispute that said sum constitutes child support, and is not subject to discharge in this case. Mr. Polishuk also concedes that this amount is entitled to priority under § 507(a)(7).

L.Ed.2d 234 (1970)); *see also Rooker,* 263 U.S. at 415–16, 44 S.Ct. 149, 68 L.Ed. 362. Generally, a federal district court cannot review matters actually decided by a state court, *Rooker,* 263 U.S. at 415, 44 S.Ct. 149, 68 L.Ed. 362, nor can it issue "any declaratory relief that is 'inextricably intertwined' with the state court judgment,"

*Facio v. Jones,* 929 F.2d 541, 543 (10th Cir.1991) (quoting *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (extending doctrine to issues not actually decided by the state court)). *See In re Abboud,* 232 B.R. 793, 798 (Bankr.N.D.Okla.1999) (footnote omitted), *aff'd In re Abboud,* 237 B.R. 777 (10th Cir. BAP 1999). The *Rooker–Feldman* doctrine is designed to prevent lower federal courts from acting in the place of state appellate courts.

 Plaintiff argues that because the State Court has previously held that the Credit Card Debt is in the nature of support, this Court is barred from further review of the issue. The problem with Plaintiff's analysis lies in the fact that the State Court expressly declined to visit the issues of federal law raised under § 507(a)(7) and § 523(a)(5), leaving those decisions "solely for the Bankruptcy Judge to make." *See Plaintiff's Exhibit 2, ¶¶ 29, 32, 34 and 36.* Any decision of this Court regarding dischargeability and claim priority will not operate as a review of the Divorce Decree. The *Rooker–Feldman* doctrine does not apply in this case.

*Application of § 507(a)(7) and § 523(a)(5)*

 In order to determine whether the Credit Card Debt and/or the Fee Award are non-dischargeable under § 523(a)(5) (and also entitled to priority status under § 507(a)(7)), this Court must apply the following two part test:

> *In re Sampson,* decided subsequent to the bankruptcy court's ruling below, held that a bankruptcy court must conduct a two-part inquiry when resolving the issue of whether payments from one spouse to another incident to divorce settlement are in the nature of support. First, the court must divine the spouses' shared intent as to the nature of the payment. This inquiry is not limited to the words of the settlement agreement, even if unambiguous. Indeed, the bankruptcy court is required to look behind the words and labels of the agreement in resolving this issue. Second, if the court decides that the payment was intended as support, it must then determine that the substance of the payment was in the nature of support at the time of the divorce—i.e., whether the surrounding facts and circumstances, especially financial, lend support to such a finding.

*See In re Young,* 35 F.3d 499, 500 (10th Cir.1994) (hereafter *"Young"*) (citing *In re Sampson,* 997 F.2d 717, 722–726 (10th Cir. 1993)). The obligation at issue need not be in the form of a direct payment from one ex-spouse to the other. The obligation of one ex-spouse to hold the other harmless from the payment of a joint debt may also be considered a support obligation. *See Yeates v. Yeates (In re Yeates),* 807 F.2d 874 (10th Cir.1986) (holding such an obligation to be non-dischargeable); *see also Dewey,* 223 B.R. at 564–565.

 This Court need look no further than the Divorce Decree to determine the intended nature of Defendant's obligation to hold Plaintiff harmless with respect to the Credit Card Debt. With respect to each item of Credit Card Debt, the State Court unequivocally stated that "it is also necessary for that [sic] the hold harmless obligation be considered a support obligation owed to Plaintiff, the minor child in her custody, and the adult child Plaintiff is supporting during school." This determination was made by the State Court at the conclusion of a four day trial. This Court finds that the Defendant's obligation to hold Plaintiff harmless from the Credit Card Debt was an obligation intended to be in the nature of support.

The second prong of the *Sampson* test requires the Court to "determine [whether] the substance of the payment was in the nature of support at the time of the divorce." *See Young*, 35 F.3d at 500. Our Bankruptcy Appellate Panel faced a factual situation similar to the case at bar in *Dewey*. In that case, the creditor (ex-spouse) objected to confirmation of debtor's proposed Chapter 13 plan because the plan did not treat the debtor's hold harmless obligations to the ex-spouse as a priority claim under § 507(a)(7). There, as here, the obligations at issue were credit card debts incurred by the debtor for his own purposes, and were not related to the support of the ex-spouse or children of the marriage. The bankruptcy court sustained the objection, finding that the hold harmless obligation was in the nature of support. The bankruptcy appellate panel affirmed the decision of the bankruptcy court. As it affirmed the bankruptcy court, the bankruptcy appellate panel undertook the following analysis:

> The Debtor argues that the Husband's Debts cannot be support as a matter of law because such Debts are attributable to credit card purchases that in no way added to Dewey's support. According to the Debtor, since a majority of the items purchased with the credit cards were for goods and services unrelated to support, such as to purchase computer-related items, the debt cannot be considered to be "support." We reject this argument. As noted above, the Tenth Circuit has stated that "support" is to be interpreted broadly, and that "[t]he critical question in determining whether the obligation is, in substance, support is 'the function served by the obligation at the time of the divorce.' " *Sampson*, 997 F.2d at 725–26 (quoting *In re Gianakas*, 917 F.2d 759, 763 (3rd Cir.1990)); *see Jones*, 9 F.3d at 881–82 ("support" is interpreted broadly). This function may be determined by considering the relative financial circumstances of the parties at the time of the divorce, and a former spouse's "need for support at the

time of the divorce is sufficient to presume that the parties intended the obligation as support." *Sampson*, 997 F.2d at 726 n. 7. Here the bankruptcy court found that Dewey was in need of support and that she gave up monthly support payments in return for the Debtor's agreement to pay the joint Husband's Debts. These factual findings are not clearly erroneous. Thus, *since the function served by the Debtor's payment of the Husband's Debts was to relieve Dewey of any joint obligation on the debts so as to allow her to use her limited income to support herself, it "had the actual effect of providing support to [Dewey]—enabling her to ... have a monthly income." Sylvester*, 865 F.2d at 1166 (quotation omitted) (quoted in *Sampson*, 997 F.2d at 726); *see Yeates*, 807 F.2d at 879 ("*When the agreement is ambiguous, evidence that payment of the debt is necessary in order for the plaintiff to maintain daily necessities such as food, housing and transportation indicates that the parties intended the debt to be in the nature of support.*").

*See Dewey*, 223 B.R. at 565–566 (emphasis added). Under this rationale, the Court must next consider the "function served" by that portion of the Divorce Decree which ordered Mr. Polishuk to pay the Credit Card Debt.

■ Once again, this Court finds much information and guidance in the terms of the Divorce Decree. First of all, the State Court found that Mr. Polishuk had the financial wherewithal to pay the Credit Card Debt. As it entered the Divorce Decree, the State Court gave great consideration to the earning capacity and the expenses of both Plaintiff and Defendant. The State Court found that Defendant had the ability to earn $4,525.00 per month. *See Plaintiff's Exhibit 2*, ¶ 49. The State Court further found that Defendant's monthly expenses were "greatly exaggerated," and that at least $825.00 per month in "eating out and entertaining" expenses were improper. *See Plaintiff's*

*Exhibit 2, ¶ 50.*[11] Once those expenses are removed, Defendant would have the capacity to service the Credit Card Debt, which totaled approximately $26,976.63 at the time this adversary proceeding was filed. *See Pre–Trial Order, § 1A.*[12] In addition, at the time the State Court ordered Mr. Polishuk to pay the Credit Card Debt and hold Ms. Polishuk harmless from the same, it did so with full recognition of her financial circumstances. *See Plaintiff's Exhibit 1.* This Court concludes that the purpose behind requiring Mr. Polishuk to pay the Credit Card Debt was to ensure that Ms. Polishuk would not have to pay the same, and to ensure that her income would be available to pay her expenses and service her debts. In addition, this Court believes that the State Court intended to ensure that the sums awarded to Ms. Polishuk for child support were not inadvertently consumed in servicing the Credit Card Debt.[13]

Mr. Polishuk asks this Court to review the bankruptcy schedules which he filed in this case and consider his financial condition evidence that he does not have the ability to pay the Credit Card Debt. Mr. Polishuk argues that his inability to pay all of his scheduled indebtedness is evidence that he does not have the ability to pay the Credit Card Debt. The Court disagrees for several reasons. Most of the credit card debt listed in the bankruptcy schedules was also listed in the Divorce Decree.[14] According to the bankruptcy schedules, all credit card debt which was not listed in the Divorce Decree was incurred in 1998, after the filing of the divorce petition. The Court has no explanation from Mr. Polishuk for the fact that more credit card debt is listed in his bankruptcy schedules than in the Divorce Decree[15]; if in fact Mr. Polishuk incurred additional credit card debt after the Divorce Decree was

11. The State Court also questioned many other claimed expenses of Mr. Polishuk. *See Plaintiff's Exhibit 2, ¶ 50.*

12. If one assumes an annual interest rate of 15% and monthly payments of $825.00, the Credit Card Debt could be amortized over a period of approximately 42 months. If interest is calculated at 21% per annum (the maximum rate under Oklahoma law), the Credit Card Debt could be amortized over a period of approximately 49 months. Neither of these terms is unreasonable or oppressive.

13. As it reaches this decision, the Court is aware that: (1) Ms. Polishuk earned more than Mr. Polishuk; and (2) the expenses outlined by Ms. Polishuk in the Pretrial Financial Declaration represent a reasonably affluent lifestyle. The Court finds neither factor to be significant. The State Court certainly took the relative income capacity of the parties into account as it ordered Mr. Polishuk to pay the Credit Card Debt. The Divorce Decree indicates that Mr. Polishuk's income and expenses were the subject of much scrutiny by the State Court. *See Plaintiff's Exhibit 1, ¶¶ 49 & 50.* In addition, this Court is aware of no precedent which would require Ms. Polishuk or the parties' son to live at a minimal standard of living in order for the Credit Card Debt to be considered alimony, support or maintenance under § 523(a)(5). The relative financial ability of the parties is a factor to be considered under § 523(a)(15) of the

Bankruptcy Code, not § 523(a)(5). *See* § 523(a)(15).

14. A comparison of the credit card indebtedness listed in the Divorce Decree and that listed in Defendant's amended bankruptcy schedules filed on February 8, 1999, reveals that the following creditors are included in both:

| | |
|---|---|
| American Express | Acct. No. 373742635102003 |
| American Express | Acct. No. 371388630291003 |
| American Express | Acct. No. 372263272761002 |
| American Express | Acct. No. 37280676433301 |
| Chase Bank | Acct. No. 42670020031038 |
| Chase Bank | Acct. No. 4226610754720049 |
| Citibank | Acct. No. 4128003297193768 |
| Citibank | Acct. No. 5410654074921815 |
| Citibank | Acct. No. 5472330107274598 |
| First Bankcard | Acct. No. 4418330208088871 |
| First USA | Acct. No. 4417122391147296 |
| Nations Bank | Acct. No. 4639000420003643 |
| Nations Bank | Acct. No. 5342080014693251 |
| Norwest Bank | Acct. No. 4321019504000005 |
| Norwest Bank | Acct. No. 5425869604009260 |
| Private Issue Discover Card | Acct. No. 6011300295001794 |

*See Plaintiff's Exhibit 1; see also Defendant's Exhibit 2.*

15. Mr. Polishuk did not testify at the trial of this adversary proceeding.

entered, it seems inequitable to consider the same as the Court considers whether he had the ability to pay the Credit Card Debt at the time the Divorce Decree was entered. The Court finds Mr. Polishuk's bankruptcy schedules to be of little assistance in determining his ability to pay the Credit Card Debt.

This Court concludes that under the terms of the Divorce Decree, Mr. Polishuk's obligation to hold Ms. Polishuk harmless from the Credit Card Debt was intended to be in the nature of alimony, maintenance and/or support. The Court further concludes that said obligation is, as a matter of substance, alimony, maintenance and/or support. As a result, Mr. Polishuk's obligation to hold Ms. Polishuk harmless from the Credit Card is nondischargeable under § 523(a)(5), and is entitled to priority status under § 507(a)(7).

*Attorneys' Fees*

 Next the Court considers the dischargeability of the award of attorneys' fees to Ms. Polishuk. "Courts addressing the issue consistently hold that such an [attorneys' fee] award is nondischargeable under Section 523(a)(5)." *See Lanting v. Lanting (In re Lanting),* 198 B.R. 817, 821 (Bankr.N.D.Ala.1996) (citation omitted) (hereafter *"Lanting"*); *see also Robinson v. Robinson (In re Robinson),* 193 B.R. 367, 372 (Bankr.N.D.Ga.1996) (hereafter *"Robinson"*). The determination of whether the attorneys' fee award is in the nature of support pursuant to § 523(a)(5) is primarily determined by federal bankruptcy law. *See In re Jones,* 9 F.3d at 880. However, the Court may consider applicable state law in its decision of whether a debt owed to an ex-spouse for attorney's fees is in the nature of support. *Id.* The test for dischargeability of fee awards is the same as other types of divorce related obligations: (1) the intent behind the creation of the obligation; and (2) whether it actually operates to provide support to the ex-spouse. *See Robinson,* 193 B.R. at 373 ("Thus, in the context of an attorney's fee award, the intent of the

divorce court to provide support should form the object to any inquiry under section § 523(a)(5).") (citations omitted).

 Generally, under Oklahoma law each party to a divorce must pay their own attorney's fees; however, either party may be required to pay the attorney's fees of the other if "just and proper under the circumstances" and if so indicated "by the statute-mandated process of judicial balancing of the equities." *See Barnett v. Barnett,* 917 P.2d 473, 478 (Okla.1996). Specifically, Oklahoma state statutory law holds in relevant part:

> § 110. Orders concerning property, children, support and expenses
>
> · · ·
>
> C. Upon granting a decree of divorce or separate maintenance, the court may require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances.

Okla.Stat. tit. 43, § 110(C) (West 1990 & Supp.1999). Therefore, a court ordered award for attorneys fees in a divorce action involving support litigation is generally held by Oklahoma courts to be an "accessory" to the support award and in the nature of support and maintenance. *See Turman v. Turman,* 438 P.2d 488, 490 (Okla.1968); *see generally Wilks v. Wilks,* 632 P.2d 759, 763 (Okla.1981). Federal courts have followed much the same paradigm. A majority of bankruptcy courts have followed the state courts' lead holding "counsel fees as being within the definition of alimony, maintenance, and support." *In re Spong,* 661 F.2d 6, 9 (2nd Cir.1981); *see also Robinson,* 193 B.R. at 367 (and cases cited therein); *see also Lanting,* 198 B.R. at 821–822.

 In the present case, the State Court held Ms. Polishuk harmless from the Credit Card Debt and determined those hold harmless obligations to be in the nature of support. In addition, after reviewing the same, and apparently as part of the same allocation of liabilities

which led to the ruling that Mr. Polishuk must pay the Credit Card Debt, the State Court entered the Fee Award. A ruling by this Court that the Fee Award is dischargeable would to a large degree neutralize the hold harmless provisions contained in the Divorce Decree with respect to the Credit Card Debt. Even though the judgment entered with respect to the Fee Award does not directly state that it is intended as support, the Court must place considerations of substance over those of form. *See In the Matter of Joseph,* 16 F.3d at 88; *see also In re Spong,* 661 F.2d at 9. The Court concludes that the Fee Award is "part of an overall economic arrangement" to provide Ms. Polishuk with the ability to support herself and her dependents. *See In the Matter of Joseph,* 16 F.3d 86, 87 (5th Cir.1994). Therefore, the Court finds the Fee Award to Ms. Polishuk was intended as support by the State Court and functions as support in actuality. Hence, the Fee Award is non-dischargeable and entitled to priority status.

*Post–Petition Interest*

The Court must decide whether the interest, penalties and fees that have accrued and are accruing on the Credit Card Debt and the attorney's fee award should be held nondischargeable pursuant to § 523(a)(5), and be assigned priority status under § 507(a)(7). The United States Supreme Court found, in addition to the value of money that was actually obtained by fraud, treble damages, attorney's fees and costs to fall under the discharge exception for actual fraud pursuant to § 523(a)(2)(A). *See Cohen v. De La Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998) (hereafter *"Cohen"*), Courts have held that "the status of ancillary obligations such as attorney's fees and interest" are determined by the non-dischargeable nature of "the primary debt," and that therefore fees, costs and interest are ancillary to the non-dischargeable debt

and are also non-dischargeable. *See In the Matter of Gober,* 100 F.3d 1195, 1208 (5th Cir.1996) (and cases cited therein).

Section 523(a)(5) excepts from discharge "**any debt** ... to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, ..." [16] § 523(a)(5) (emphasis added). Under the reasoning elucidated in *Cohen* "the most straightforward reading" of § 523(a)(5) dictates that once a debt or hold harmless obligation owed to Ms. Polishuk has been determined to be non-dischargeable under § 523(a)(5), all of the ancillary obligations which are a part of that debt, including interest, fees and penalties accruing or having been accrued, are also non-dischargeable. *See Cohen,* 523 U.S. 213, 118 S.Ct. at 1216, 140 L.Ed.2d 341. The Court finds that the Fee Award, interest on the Fee Award, and interest, fees and penalties on the Credit Card Debt are nondischargeable and entitled to priority status.

---

16. The Court is aware of the exceptions listed in subsections (A) & (B) of § 523(a)(5) as noted earlier, but finds them inapplicable here. Neither the Credit Card Debt nor the Fee Award have been assigned, and the Court has determined that they are in the nature of support.