**In re Jeffrey L. MILLER, Debtor.**

**Jeffrey L. Miller, Appellant,**

**v.**

**Luanne B. Miller, Appellee.**

**BAP No. UT–02–041.**
**Bankruptcy No. 01T–27633.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Nov. 4, 2002.

Submitted on the briefs: * Chris L. Schmutz, Schmutz, Mohlman & Rohbock, LLC, Bountiful, UT, for Appellant.

John C. Green, Green & Luhn, P.C., Salt Lake City, UT, for Appellee.

Before McFEELEY, Chief Judge, BOHANON, and MICHAEL, Bankruptcy Judges.

## OPINION

MICHAEL, Bankruptcy Judge.

This appeal presents a narrow issue: namely, whether the bankruptcy court erred in determining that a judgment entered in a state court divorce action was entitled to priority status under § 507(a)(7) of the Bankruptcy Code.[1] We affirm.

## I. Jurisdiction

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002. Neither party elected to have this appeal heard by the United States District Court

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq.* (West 2002).

for the District of Utah, thus consenting to review by this Court.

 A decision is considered final if "it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). An order disposing of an objection to a claim is a final order for purposes of 28 U.S.C. § 158(a)(1). *See In re Geneva Steel Co.*, 260 B.R. 517, 520 (10th Cir. BAP 2001) (citing *In re Garner*, 246 B.R. 617, 619 (9th Cir. BAP 2000)), *aff'd*, 281 F.3d 1173 (10th Cir.2002). Similarly, an order fixing the priority of a creditor's claim is a final order for appeal purposes. *See id.* at 520 (citing *In re Kids Creek Partners, L.P.*, 200 F.3d 1070, 1074 (7th Cir.2000)).

## II. Background

Jeffrey Miller ("Jeffrey") and Luanne Miller ("Luanne") were married in 1975. During their marriage Jeffrey founded and managed Newco Electric, Inc., and Luanne was a stay-at-home mother. In recent years, the business and the marriage fell on hard times.

On August 16, 2000, Luanne filed a divorce action in the Third Judicial District Court for the state of Utah (the "state court"). In January of the following year, a state court commissioner entered her report and recommendation regarding a temporary order for child custody, property division, child support, and alimony.[2] As part of her report, the commissioner recommended that Jeffrey be required to pay the first and second mortgages on the marital home in the combined amount of $3,300 a month (the "house payments"),

plus direct alimony of $43 per month. Four months later, the state court judge presiding over the action substantially adopted the commissioner's recommendations for the temporary order, including the award that Jeffrey pay the first and second mortgages to the lenders as "a combination of spousal and child support." Order ¶ 4, *in* Appellee's App. at 24. The parties were also "restrained from selling or disposing of or in any way jeopardizing the assets of the parties without the consent of the other." Order ¶ 10, *in* Appellee's App. at 26.

Notwithstanding the order of the state court, Jeffrey failed to make the house payments for a period of four months. Luanne did not have the ability to make the payments, and, as a result, the payments to the first and second mortgage holders fell into arrears. The house was ultimately sold by agreement of Jeffrey and Luanne, in part to avoid the consequences of a foreclosure action. The proceeds of sale were not sufficient to satisfy the holders of the first and second mortgages.

Shortly after the state court judge adopted the report and recommendation, Luanne filed an action in the state court seeking to hold Jeffrey in contempt of the state court due to, among other things, his failure to make the house payments. The commissioner prepared findings of fact and a proposed order for the court, which included awards in favor of Luanne for failure to pay the mortgage payments to the lenders as well as awards for Jeffrey's wrongful appropriation of marital assets. Jeffrey sought the protection of the bankruptcy court before the proposed order could be entered.

---

**2.** In Utah, a commissioner's recommendation and proposed temporary order are binding on the parties unless and until they are modified by the district court judge. *See, e.g., Hoagland v. Hoagland*, 852 P.2d 1025, 1029 (Utah Ct.App.1993).

As part of his bankruptcy case, Jeffrey admitted that Luanne was entitled to a priority claim, which he calculated to be in the amount of $36,445.20. *See* Calculation of Claim, *in* Appellant's App. at 36. Luanne filed a priority claim in the amount of $51,850.00. *See* Objection to Claim ¶ 12, *in* Appellant's App. at 31. One of the major differences in the calculations of the claim was the inclusion by Luanne of the house payments that Jeffrey had failed to make, which totaled the sum of $13,200.00. Jeffrey objected to the claim, and an evidentiary hearing with respect to the objection was held on March 6, 2002. At the evidentiary hearing, both parties introduced documentary and testimonial evidence.

On March 14, 2002, the bankruptcy court made its findings and conclusions from the bench. The bankruptcy court determined that Jeffrey had misappropriated tax refunds and 401k dispersals in violation of the state court order, and that as a result, Luanne was entitled to $36,445.20 from Jeffrey.[3] In addition, the bankruptcy court determined that Jeffrey's obligation to pay the first and second mortgages to the lenders was in the nature of alimony and support, and was thus entitled to priority under § 507(a)(7). Specifically, the bankruptcy court made the following findings:

> Judge Lewis's Order is very clear in that the first and second mortgage payments to be paid by the Debtor constituted partial alimony and support, and this Court finds that they are in the nature of alimony and support. The mortgage payments were not ordered so as to relieve Ms. Miller from a mortgage foreclosure or a deficiency claim, but as alimony and support for housing costs. The Court also finds that the first and second mortgage payments total $3300

per month and were not paid by the Debtor for the months of January through April 2001.

Transcript at 5–6, *in* Appellant's App. at 123–24. The bankruptcy court awarded Luanne a priority claim of $13,200 for the four months that Jeffrey had failed to pay the mortgages to the lenders while Luanne lived in the marital home. Thus, Luanne's total marital priority claim was determined to be $49,645.20.

Jeffrey has proposed and confirmed a plan of reorganization in his bankruptcy case. Under the terms of that plan, the remaining balance due and owing on the first and second mortgages will be paid in full. The plan also provides for payment in full of the priority claim of Luanne, once that amount has been finally determined.

### III. Standard of Review

Jeffrey asks this Court to reverse the finding of the bankruptcy court that his obligation to make the house payments was in the nature of alimony, maintenance or support, and thus entitled to priority under § 507(a)(7). "It is well-settled that the issue of whether an obligation is support is a factual question subject to the clearly erroneous standard of review." *Dewey v. Dewey (In re Dewey)*, 223 B.R. 559, 564 (10th Cir. BAP 1998), *aff'd without published opinion*, 202 F.3d 281, 1999 WL 1136744 (10th Cir.1999). "A factual finding is 'clearly erroneous' when 'it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.'" *Payne v. Clarendon Nat'l Ins. Co. (In re Sunset Sales, Inc.)*, 220 B.R. 1005, 1012 (10th Cir. BAP 1998) (quoting *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir.1990) (fur-

---

**3.** This portion of Luanne's claim is not in dispute.

ther internal quotes omitted)). In reviewing findings of fact, we must give "due regard ... to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr.P. 8013.

## IV. Discussion

 Section 507(a)(7) of the Bankruptcy Code provides in pertinent part:

(a) The following expenses and claims have priority in the following order:

. . . .

(7) Seventh, allowed claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt—

. . .

(B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.

11 U.S.C. § 507(a)(7). We interpret this provision in the same way we interpret the similar words of § 523(a)(5). *See Dewey*, 223 B.R. at 563–64 ("[G]iven the similarity of the language of §§ 507(a)(7) and 523(a)(5) and their purpose, the definition [of maintenance and support] developed under § 523(a)(5) should have equal effect under § 507(a)(7)."). The determination of whether a debt is in the nature of maintenance and support is a question of federal law. *See Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 721 (10th Cir. 1993); *see also Lowther v. Lowther (In re Lowther)*, 266 B.R. 753, 756 (10th Cir. BAP 2001). In this circuit, such a determina-

tion is made using a two-part test. A court must (i) look to see if the state court intended the award as maintenance and support; and (ii) examine "whether the evidence adduced in support of the [award] justifies that court's characterization of the payments as alimony." *Young v. Young (In re Young)*, 35 F.3d 499, 501 (10th Cir.1994); *see also Merrill v. Merrill (In re Merrill)*, 246 B.R. 906, 915 (Bankr. N.D.Okla.), *aff'd*, 252 B.R. 497 (10th Cir. BAP 2000), *aff'd without published opinion*, 15 Fed.Appx. 766 (10th Cir.2001). The terms "maintenance" and "support" are entitled to broad application, *see Jones v. Jones (In re Jones)*, 9 F.3d 878, 881 (10th Cir.1993), and "[i]t is the nature of the debt owed, not the identity of the payee, that governs whether a debt is support." *Dewey*, 223 B.R. at 564.

 In the present case, the language of the decree establishes the intent of the state court that the house payments be in the nature of support. At the time the state court entered its order, the parties had three minor children, primary custody of which was awarded to Luanne. As the state court determined the amount of alimony to be paid directly to Luanne (a mere $43.00 per month), it considered the fact that it had ordered Jeffrey to make the house payments. Each of these items of evidence justify the characterization of the mortgage payments as maintenance and support. Thus, we cannot say that the bankruptcy court committed clear error as it reached its conclusion.

Jeffrey relies on two arguments in support of his contention that the bankruptcy court erred in awarding Luanne a priority claim of $13,200 as a result of his failure to make the payments on the marital home. First, he contends that the bankruptcy court's ruling "improperly changes the divorce court's order by requiring payment, not to the lenders, but to Luanne." Appel-

lant's Br. at 9. He also argues that because Luanne received the benefit of living in the marital home even though Jeffrey defaulted on his obligations, any payments to Luanne at this point in time would constitute a "windfall." We are unpersuaded.

When the state court learned that Jeffrey had failed to make payments to the mortgage holders, it ordered him to make those payments directly to Luanne. It is this latter obligation which she seeks to enforce. The order of the bankruptcy court does not change the order of the state court in any way, shape or form. The argument that any payments to Luanne would constitute a windfall is specious. Under Jeffrey's rationale, the mere fact that the ex-spouse and the children have managed to survive notwithstanding a debtor's failure to pay support justifies the elimination of all past due support obligations. If Jeffrey is correct, all any debtor need do with respect to support payments is to default on those payments and seek bankruptcy court relief. Such a result would render § 507(a)(7) a nullity.

## V. Conclusion

The decision of the bankruptcy court is AFFIRMED.[4]

---

**4.** Also before this Court is the Appellant's Motion to Exempt Notice of Appeal from Appendix to Appellant's Brief, filed August 14, 2002. The Motion is unopposed. The Court GRANTS the Motion.