### In re TELLURIDE INCOME GROWTH LIMITED PART-NERSHIP, Debtor.

### No. 03–13632 ABC.

United States Bankruptcy Court, D. Colorado.

March 4, 2004.

---

**49.** 232 B.R. 209 (10th Cir. BAP 1999).   **50.** *Blagg,* 223 B.R. at 804.

Jeffrey Weinman, Denver, CO, for Debtor.

Virginia M. Dalton, Denver, CO, for trustee.

Paul G. Quinn, Denver, CO, for U.S. Trustee.

## ORDER GRANTING LIMITED PARTNERS' MOTION FOR SUMMARY JUDGMENT

A. BRUCE CAMPBELL, Bankruptcy Judge.

This matter comes before the Court on certain of the limited partners' (the "Moving Limited Partners") of the Debtor, Telluride Income Growth Limited Partnership ("TIGLP"), Motion for Summary Judgment on their Motion to Dismiss this Chapter 7 case (the "Motion"). The Motion is objected to by Telluride Global Development, LLC ("Telluride Global"), a creditor of TIGLP. The Court, having considered the briefs filed by the parties, being otherwise advised in the premises, and satisfied that there is no genuine issue of material act with respect to the Moving Limited Partners' Motion to Dismiss, grants summary judgment dismissing the voluntary petition in this case and vacating this Court's order for relief.

## I. UNDISPUTED FACTS

The following facts are undisputed:

TIGLP is an Arizona Limited Partnership formed in 1991 for the purpose of acquiring and developing certain real property in Telluride, Colorado, now known as the Ballard House. (Exhibits F and H to the Motion.)

On March 5, 2003, the voluntary Chapter 7 petition herein was filed on behalf of TIGLP by "Peaks Return LLC, General Partner"[1]. The petition was signed on behalf of "Peaks Return LLC" by Hamish Cruden, manager. (Docket Entry No. 2.)

Peaks Returns Limited Liability Company was a Colorado limited liability company, formed in December, 1994. (Exhibit C to the Motion.)

On February 17, 1995, Peaks Returns Limited Liability Company filed a change of name to Peak Returns Limited Liability Company and a Certificate of Assumed or Trade Name for Peak Returns L.L.C. (Exhibit D to the Motion.) This entity is referred to hereinafter as "Peak I."

Peak I became the general partner of TIGLP in late 1994 or early 1995. (Page 14, Lines 23–24 of Transcript of 341 Meeting, Exhibit F to the Motion.)

Peak I was suspended on June 1, 1997, by the Colorado Secretary of State for failure to file the 1996 periodic report and was administratively dissolved, pursuant to C.R.S. § 7–80–302(5), on June 1, 2000. (Exhibit E to the Motion.)

Peak Returns Limited Liability Company, signed Articles of Organization on March 3, 2003, which were filed with the Colorado Secretary of State on March 4, 2003. In the Articles of Organization it is stated that the entity is "designated as the Successor in Interest for all intents and purposes for that certain dissolved and suspended Colorado limited liability company known as Peak Returns Limited Liability Company...organized on 12/7/94, and administratively dissolved by the Colorado Secretary of State on 1/1/2001 (sic)." (Exhibit G to the Motion.) This entity is referred to hereinafter as "Peak II."

TIGLP's Agreement of Limited Partnership provides, in Section 8.5, that "a Person ceases to be a General Partner upon the occurrence of any of the following

---

1. The name Peaks Return LLC on the petition is apparently a clerical error. As discussed in more detail below, the Colorado limited liability company formed in 1994 was originally called Peaks Returns Limited Liability Company and later changed its name to Peak Returns Limited Liability Company a/k/a Peak Returns L.L.C. An entity formed in 2003 was called Peak Returns Limited Liability Company. No papers filed herein indicate there ever was an entity known as Peaks Return LLC.

events: death, disability, resignation, removal by the Limited Partners, adjudication of bankruptcy, insolvency, insanity or incompetency, making an assignment for the benefit of creditors, or the dissolution or termination of a General Partner which is a corporation or partnership." "Person" is defined by Section 2.1 of the Agreement of Limited Partnership as "any natural person, partnership, corporation, association or other legal entity." (Exhibit H to the Motion.)

Section 8.7 of TIGLP's Agreement of Limited Partnership provides that, upon termination of a General Partner, in the absence of a remaining General Partner, a Successor General Partner shall be elected by majority vote of the Limited Partners. (Exhibit H to the Motion.) Peak II was not elected as Successor General Partner of TIGLP according to these provisions. (¶ 5 of Affidavit of Oliver James Sterling, Exhibit I to the Motion.)

In the summer of 2003, Oliver James Sterling was elected as "liquidator" for TIGLP pursuant to the provisions of TIGLP's Agreement of Limited Partnership. (¶ 3 of Affidavit of Oliver James Sterling, Exhibit I to the Motion.)

Prior to the filing of this voluntary Chapter 7 case, the Moving Limited Partners and Telluride Global were involved in state court litigation in the District Court for San Miguel County Colorado (the "State Court Action"). The State Court Action involved a derivative claim, brought on behalf of TIGLP, by the Moving Limited Partners against Telluride Global, the current owner of the Ballard House property, and others, seeking foreclosure of a

Purchase Money Deed of Trust on the Ballard House property given by Western Slope, LLC ("Western"), for the benefit of TIGLP.[2] The State Court Action also includes derivative claims for fraud and misappropriation. (See Docket Nos. 26 and 32).

## II. PROCEDURAL HISTORY

Jeanne Jagow was appointed Trustee on March 5, 2003, the same day this voluntary Chapter 7 case was filed on behalf of TIGLP.

On May 27, 2003, the Trustee filed her Application to Approve Agreement to Acquire Assets and Release Claims (the "Settlement Application"). The Settlement Application sought the Court's approval of the transfer of all of TIGLP's derivative claims to Telluride Asset Resolution, LLC, in exchange for $50,000. The settlement Application also provided that the Trustee would release all of TIGLP's claims against Telluride Global and others and that the Trustee would release TIGLP's Purchase Money Deed of Trust on the Ballard House property.

The Moving Limited Partners objected to the Settlement Application and filed a Motion to Dismiss the case on June 13, 2003. Various parties, including the Trustee and Telluride Global, objected to the Motion to Dismiss and the Court set a combined hearing on the Settlement Application and the Motion to Dismiss for November 4, 2003.

Subsequent to the filing of their original Motion to Dismiss, the Moving Limited

**2.** TIGLP transferred the Ballard House property to Western in October, 1999. To document this transfer, TIGLP and Western executed a Contract of Sale and Equity Participation Agreement (the "Equity Participation Agreement"). The Purchase Money Deed of Trust involved in the State Court

Action was given by Western to TIGLP to secure performance of Western's obligations under the Equity Participation Agreement. In September 2002, the Ballard House property was transferred to E–Global Development Limited, and from E–Global Development Limited to Telluride Global.

Partners became aware of the suspension and dissolution of Peak I and based upon those facts, filed their Supplement to Motion to Dismiss and the instant Motion for Summary Judgment on Motion to Dismiss. The only issue raised in the Moving Limited Partners' Motion for Summary Judgment on Motion to Dismiss is whether or not the Chapter 7 petition herein was filed by a entity which was properly authorized to file a bankruptcy petition on behalf of TIGLP.

By Stipulation dated October 23, 2003, the parties agreed to postpone consideration of all other pending matters until the Court ruled on the Motion to Dismiss.

On October 29, 2003, an involuntary petition for relief under Chapter 7 was filed against the same debtor, TIGLP, under case number 03–31600, by certain purported creditors of TIGLP, including Telluride Global. Telluride Global subsequently filed a Motion to Consolidate the case created by the voluntary petition (subject to the pending Motion for Summary Judgment on Motion to Dismiss) with the case arising from the involuntary petition. An Answer to the Involuntary Petition was filed by Oliver James Sterling II, who purports to be the duly elected liquidator of TIGLP. A Motion to Strike the Answer was filed by Telluride Global. No order for relief has entered on the involuntary petition.[3]

## III. ARGUMENTS OF THE PARTIES

The Moving Limited Partners argue that this proceeding was commenced either by Peak I, who had ceased to be a General Partner of TIGLP and had no authority to transact business upon its administrative dissolution, or by Peak II, an entity which had never been elected as a Successor General Partner pursuant to TIGLP's Articles of Limited Partnership. In either case, neither Peak I nor Peak II had any authority to act for TIGLP, and the filing of the petition was not a valid act of TIGLP. The Moving Limited Partners contend that, without a validly filed Chapter 7 petition, this Court has no subject matter jurisdiction, and this case must be dismissed.

Telluride Global argues that Peak I did not cease to be a General Partner upon its administrative dissolution because TIGLP's Articles of Limited Partnership provide for such an automatic termination of a General Partner only when the terminated General Partner is a corporation or partnership. Because Peak I is a limited liability company, Telluride Global maintains that this provision has no application. If the Court finds that the voluntary petition was improperly filed, Telluride Global argues that the voluntary case should not be dismissed because the involuntary case provides an independent basis for the Court's jurisdiction.

## IV. DISCUSSION AND CONCLUSIONS

Rule 56 of the Federal Rules of Civil Procedure, made applicable in contested matters by Bankruptcy Rule 9014, provides that summary judgment shall be granted if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Here, the parties agree upon all of the facts relating to the formation and dissolution of Peak I and the provisions of the

---

**3.** The Court has not ruled on the merits of the Involuntary Petition because the Motion for Summary Judgment on the Moving Limited Partners' Motion to Dismiss the voluntary case was pending. Had the Court determined **not** to grant the Motion to Dismiss the voluntary case, the Involuntary Petition would have been moot.

agreement of limited partnership for TIGLP. It is also undisputed that Peak II was not elected a successor general partner pursuant to the terms of TIGLP's agreement of limited partnership. Since all of the material facts relating to the authority of Peak I and of Peak II to act on behalf of TIGLP are undisputed, summary judgment on these issues is warranted.

■ Cases decided under the bankruptcy law look to state law to determine whether a petition is filed with the proper authority. *In re Yellow Cab Cooperative Association*, 144 B.R. 505 (D.Colo.1992). Peak I and II were or are Colorado limited liability companies, and TIGLP is an Arizona limited partnership. Therefore, this Court must look to the laws of Colorado and Arizona to determine whether the voluntary Chapter 7 petition was validly filed.

The voluntary petition itself is not clear as to whether it was filed by Peak I or Peak II. *See* footnote 1. However, in disposing of this Motion for Summary Judgment, it makes no difference. Based upon the timing of the formation of Peak II (on March 3 or 4, 2003) and the filing of the voluntary petition (on March 5, 2003), the Court assumes it was intended to be filed by Peak II.

■ Peak II cannot automatically be considered to be a successor to Peak I because it is not possible to revive or reinstate a suspended limited liability company after it has been administratively dissolved pursuant to C.R.S. § 7–80–302(5). Colorado law provides, under certain circumstances, for *suspended* limited liability companies to become "reinstated,

revived, and operative," C.R.S. § 7–80–305(5). There is, however, no such power *after* dissolution. Therefore, the statement in Peak II's Articles of Organization that Peak II was the "Successor in Interest for all intents and purposes for that certain dissolved and suspended Colorado limited liability company known as [Peak I]" was of no legal force or effect. Peak II was, under Colorado law, a new, separate entity from Peak I.

As a new and separate entity, Peak II would have to have been appointed a successor general partner under TIGLP's Agreement of Limited Partnership in order to be authorized to act on behalf of TIGLP. It is undisputed that Peak II was never so appointed. Therefore Peak II had no authority to file the voluntary Chapter 7 petition herein.

■ If the Court were to assume that the petition was filed by Peak I, or even that Peak II had some authority to act on behalf of Peak I, Peak I had no authority to file a bankruptcy for TIGLP. Under Colorado law, a Colorado limited liability company which is suspended "shall be inoperative and no longer competent to transact business in this state." C.R.S. § 7–80–305(1). Therefore, Peak I was incompetent to transact business in Colorado as of 1997. The Colorado statutes currently in effect governing limited liability companies do not address the precise status of an administratively dissolved limited liability company.[4] However, Peak I could clearly have no *greater* authority to conduct business after its dissolution than it did during the period in which it was merely suspended. After its administra-

---

**4.** A *voluntarily* dissolved limited liability company "shall cease to carry on its business, except insofar as may be necessary for the winding up of its business" upon the filing of its statement of intent to dissolve. C.R.S. § 7–80–804. And, upon filing of articles of dissolution, "the existence of the company shall cease," except for certain other specified actions relating to winding up of the affairs of the dissolved limited liability company. C.R.S. § 7–80–807(2).

tive dissolution in June 2000, the only arguable authority Peak I retained was to accomplish such actions as were necessary for the winding up of the its own business. From the pleadings and undisputed facts of record in this case, the bankruptcy petition in this case had nothing to do with the winding up of the affairs of Peak I. Therefore, Peak I had no authority to file the bankruptcy petition for TIGLP.

▇▇▇ According to both TIGLP's Agreement of Limited Partnership, and Arizona law, Peak I's dissolution, on June 1, 2000, caused it to be terminated as a General Partner of TIGLP. *See,* Article 8.5 of the Agreement of Limited Partnership of TIGLP and A.R.S. § 29–323(3). Telluride Global argues that the dissolution of Peak I did not cause its termination as a general partner because a strict reading of Article 8.5 of the Agreement of Limited Partnership provides for such termination only if the dissolved General Partner was a corporation or partnership. According to this argument, Peak I was not terminated as a General Partner upon its dissolution because it was a limited liability company. The Arizona statute authorizing the creation of limited liability companies, A.R.S. § 29–601, *et seq.,* was not adopted until 1992–one year after TIGLP's Agreement of Limited Partnership was drafted. It is not surprising, therefore, that a limited liability company was not mentioned in Article 8.5. However, the evident intent of Section 8.5 is that any legal entity that ceased functioning through dissolution would cease to be a general partner upon such dissolution. Here, this would necessarily be the case because Peak I, as a Colorado limited liability company, once suspended, much less dissolved, had no legal capacity, and in the words of the Colorado limited liability statute, was "inoperative and no longer competent to transact business" as a general

partner of TIGLP, or otherwise. A court should not permit an overly narrow reading of the terms used in a contract to defeat the intentions of the parties, *Ad Two, Inc. v. City and County of Denver,* 9 P.3d 373 (Colo.2000).

TIGLP's Agreement of Limited Partnership, in Article 1.7.c., and A.R.S. § 29–344, provide that TIGLP *itself* was dissolved in 2000, upon the withdrawal (through dissolution) of its sole general partner, Peak I. Both the Agreement and the Arizona statute provide that a limited partnership can continue in business after the withdrawal of its sole general partner *only* if a substitute or successor general partner is elected within 90 days. *See,* Article 1.7.c. of TIGLP's Agreement of Limited Partnership and A.R.S. § 29–344. If no such election occurs, Article 9.2 of the TIGLP's Agreement of Limited Partnership provides that the business of TIGLP will be wound up by a limited partner or some other person selected by a majority vote of the limited partners. It is undisputed that there was no such election of either Peak I or Peak II to act on behalf of TIGLP in any capacity after the dissolution of Peak I. In fact, in the summer of 2003, a different individual was apparently elected as liquidator of TIGLP by its limited partners.

▇▇▇ For all of the reasons set forth above, neither Peak I nor Peak II, was the properly authorized entity to file a bankruptcy petition on behalf of TIGLP. When a petition is filed by a person without authority to act, the case should be dismissed. *In re Arkco Properties, Inc.,* 207 B.R. 624 (Bankr.E.D.Ark.1997); *In re Foxridge Limited Partnership,* 238 B.R. 810 (Bankr.W.D.Mo.1999).

▇▇▇ Telluride Global argues that, even if the voluntary petition filed by Peak II was without authority, this Court should not dismiss the voluntary petition because

of the pendency of the involuntary petition. Telluride Global argues that the involuntary petition provides an "independent basis" for the exercise of the Court's jurisdiction and that, therefore, the voluntary petition should not be dismissed. Telluride Global cites no authority for this position, and the Court is unable to find any case, statute, or rule which would support such a conclusion.[5]

In this case, the involuntary petition will stand or fall on its own merits, and the merits of the involuntary petition will neither be affected by the deficiencies of the voluntary petition, nor can the involuntary petition be used to enhance the voluntary petition. The Court will separately set a trial on the contested involuntary petition that remains pending before it.

Therefore, there being no issue of material fact in dispute and the Moving Limited Partners having shown that they are entitled to relief as a matter of law, the Motion for Summary Judgment is GRANTED, the voluntary petition in case number 03–13632 ABC is hereby DISMISSED, and the order for relief in case number 03–13632 ABC, is hereby vacated.

---

**5.** Fed. R. Bankr.P. 1015(a) provides that "if two... petitions are pending in the same court by or against the same debtor, the court *may* order consolidation of the cases"(emphasis added). While this Rule permits consolidation of an involuntary and a voluntary petition against the same debtor, the use of the permissive "may" indicates that the court is not required to do so. Collier on Bankruptcy, 15th Ed., Vol. 9, ¶ 1015.12. Consolidation should not be ordered in cases where it is inappropriate, and cannot be used to create jurisdiction where none exists. *See e.g., In re AAPC, Inc.,* 277 B.R. 785 (Bankr.Utah 2002)(A lack of jurisdiction over parties who had not filed bankruptcy could not be corrected by *nunc pro tunc* order of consolidation.)