In re TELLURIDE INCOME GROWTH LP, Debtor.

Dennis Bullock, Don Gerber, Steve Hinkle, Mary L. Hinkle, Jerry D. James, Don G. Lyle, Jon R. Lyle, Kenneth R. Miller, Michael E. Monoscalco, Madelyn J. Monoscalco, Jill Marie Monoscalco, Laura C. Monoscalco, Eugene C. Moravec, Joseph R. Nardone, Howard W. Nutt, Ralph Edward Preston, Ken E. Rhode, James Sterling, Sandra R. Tingle, R.M. Yost Ira, R. Michael

Yost, and Roselva M. Yost, Appellants,

v.

Telluride Income Growth LP, Telluride Global Development, LLC, E. Global Development Ltd., Telluride Asset Resolution, and Jeanne Y. Jagow, Trustee, Appellees.

BAP No. CO–05–090.
Bankruptcy No. 03–31600–ABC.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

March 12, 2007.

## I. JURISDICTION AND SCOPE OF REVIEW

This Court has jurisdiction to decide "timely filed appeals from 'final judgments, order, and decrees' of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal."[4] Rule 8002(a) requires that a notice of appeal shall be filed within ten days of the entry of judgment, or within 10 days of the entry of an order resolving a post trial motion under Rules 7052, 9023, or 9024. Appellants timely filed the notice of appeal from the September 7, 2005 judgment denying the motion to alter or amend on September 16, 2005. Although the notice of appeal would be timely for an appeal from the order sustaining the 363 sale,[5] Appellants consistently state to the Court that they appeal only from the denial of the Rule 9023 motion and not from the order approving the 363 sale. The Court therefore regards this as an appeal from the denial of the Rule 9023 motion only. In this case all parties have consented to review by this Court, since no party has elected to have the appeal heard by the United States District Court for the District of Colorado.

A final decision is one which "ends the litigation on the merits and leaves nothing for the court to do but execute the judg-

Douglas G. Benedon of Benedon & Serlin, Woodland Hills, CA (Joseph Solomon of Solomon & Solomon, Telluride, CO, and Steven R. Fox, Encino, CA, with him on the briefs), for Appellants.

John C. Smiley of Lindquist & Vennum P.L.L.P, Denver, CO (Michael Gilbert, Esq., of Reed & Fanos, Ouray, CO, with him on the briefs), for Appellees.

Before McFEELEY, Chief Judge, THURMAN, and SOMERS[1], Bankruptcy Judges.

## OPINION

McFEELEY, Chief Judge.

This appeal is from the bankruptcy court's denial of the Appellants' motion, pursuant to Federal Rule of Bankruptcy Procedure 9023,[2] to alter or amend the bankruptcy court's findings of fact and conclusions of law entered when sustaining the Chapter 7 Trustee's motion to sell certain assets of the Debtor pursuant to 11 U.S.C. § 363.[3]

---

**1.** Honorable Dale L. Somers, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Kansas, sitting by designation.

**2.** Federal Rule of Bankruptcy Procedure 9023 makes Federal Rule of Civil Procedure 59 applicable in cases under the Code. The Federal Rules of Bankruptcy Procedure will hereafter be referred to in the text as "Rules" or "Rule," and the Federal Rules of Civil Procedure will be referred to in the text as "Federal Rules" or "Federal Rule."

**3.** This case was filed before October 17, 2005, when most provisions of the Bankruptcy

Abuse Prevention and Consumer Protection Act of 2005 become effective. All statutory references to the Bankruptcy Code are to 11 U.S.C. §§ 101–1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr.P. (2004), unless otherwise specified.

**4.** *In re Miller*, 284 B.R. 734, 735 (10th Cir. BAP 2002) (citing 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1)).

**5.** Fed. R. Bankr.P. 8002(b).

ment."[6] An order denying a post trial motion is a final order.[7] When there is no appeal from the underlying judgment, unless the trial court was powerless to render the judgment in the first instance, the denial raises for review only the order itself and not the underlying judgment.[8]

The scope of review of denial of a motion to alter or amend is narrow. The lower court's rulings on a motion under Federal Rule 59(e) is reviewed for abuse of discretion.[9]

## II. BACKGROUND

The facts necessary to resolve this appeal are not controverted. Although the appeal focuses on a very limited aspect of the transactions, knowledge of background facts is necessary to understand the issue on appeal.

The Debtor is Telluride Income Growth LP ("TIGLP"), an Arizona limited partnership formed in 1991 to acquire, develop, and sell real property in the town of Telluride, Colorado, known as the Ballard House. Several dozen limited partners invested approximately $1.6 million in the project. In 1994, the original general partners were replaced. William Baird was a member of the Board of Directors of the new general partner, Peak Returns, LLC, and was also in control the development's manager. One of the project's two buildings (the South Building) was completed in 1998, and the other property (the North Building) remains in the preliminary stages of construction. The Debtor ran out of money in the course of develop-

ing the North Building, and in October 1999 when faced with foreclosure, agreed to transfer several remaining unsold units in the South Building and the entirety of the uncompleted North Building to Western Slope, LLC, a Baird entity.

The agreement pursuant to which the sale occurred was called "Contract For Sale and Equity Participation Agreement" ("EPA"). Under the EPA, Western Slope agreed to pay TIGLP's existing debts on the property (at the time, over $6.4 million) and to finance and complete construction of the North Building. The EPA provided that, if build-out and sale of the Ballard House occurred, Debtor would be entitled to 80% of the net profits, and Western Slope to 20%. Net profits are defined in Schedule C as total project revenues less: (1) repayment of all project expenses and existing and future debt related to the obligations under the agreement; and (2) repayment of the amount of the Debtor's investors' outstanding original investment in an amount not to exceed $1.6 million, plus interest from the date of investment forward at the rate of 8%. A subordinated Purchase Money Deed of Trust ("PMDOT") was given to the Debtor to secure performance of Western Slope's obligations under the EPA. The EPA requires that the PMDOT include specific language limiting the remedies available in the event of breach of the EPA to recourse against the real property subject to the deed of trust, *i.e.*, the Ballard House. Debtor and Western Slope are the only

---

6. *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945).

7. *See Dimeff v. Good (In re Good),* 281 B.R. 689, 698 (10th Cir. BAP 2002) (appeal from order denying motion for relief under Rule 9024); *McLeod v. Hattaway,* 34 Fed.Appx. 200 (6th Cir.2002) (denial of motion under Fed. R.Civ.P. 52(b)).

8. *See V.T.A., Inc. v. Airco, Inc.,* 597 F.2d 220, 223 (10th Cir.1979) (appeal from denial of Fed.R.Civ.P. 60(b) motion).

9. *Morganroth & Morganroth v. DeLorean,* 213 F.3d 1301, 1313 (10th Cir.2000); *Buell v. Sec. Gen'l Life Ins. Co.,* 987 F.2d 1467, 1472 (10th Cir.1993).

named parties to both the EPA and the PMDOT.

Western Slope made no significant progress with the construction of the North Building, and by early 2002, the primary lender, Pueblo Bank, commenced foreclosure against Western Slope. On February 15, 2002, E–Global Development Limited ("E–Global"), an entity owned/controlled by the Arthur and Robert Levine families (hereafter the "Levines"), who had previously made a significant investment in the Ballard House through Bauhinia, Ltd.("Bauhinia"),[10] bought the Pueblo loan for the full amount owed. Western Slope then gave E–Global a deed in lieu of foreclosure. E–Global then quitclaimed its interest to Telluride Global Development, LLC ("Telluride Global"), also a Levine company. The transfer was subject to the EPA.

On October 11, 2002, twenty-five of Debtor's limited partners ("Limited Partners"), representing contributors of approximately one half of the original $1.6 million invested in the Debtor by limited partners, commenced litigation in San Miguel County, Colorado state court, styled *Dennis Bullock, et al. v. Telluride Income/Growth Limited Partnership, Ltd., et al.,* case number 02–CV78 (the "State Court Litigation"). There were twenty-seven defendants, including E–Global, Bauhinia, Telluride Global, Debtor, Western Slope, the Debtor's general partners, the Debtor's management and related entities, various lenders, and third-party purchasers of completed Ballard House condominium units in the South Building. The complaint alleged six causes of action: (1) breach of fiduciary duty and mismanagement of partnership assets; (2) accounting

by, and dissolution of, the Debtor; (3) damages for breach of the partnership agreement; (4) misappropriation and fraudulent conveyance of partnership assets; (5) self-dealing; and (6) foreclosure of an equitable lien against the undeveloped North Building and unsold units in the South Building. The Limited Partners' allegations included the contention that the transfer of the Ballard House to Western Slope pursuant to the EPA was fraudulent and improper. Although not filed as a derivative action, the complaint asserted causes of action that were in fact Debtor's claims. Amended complaints adding parties and amending paragraphs in the original complaint were filed.

Defendants Bauhinia, E–Global, and Telluride Global sought dismissal of the foreclosure claim for failure to state a claim. The Limited Partners defended the motion by asserting that they were proper parties to foreclose the lien on Ballard House because they were third party beneficiaries of the EPA, which is secured by the PMDOT. The motion to dismiss was denied. The state court found that the allegations of third party beneficiary status and entitlement to an equitable lien were sufficient to withstand the motion to dismiss. The state court, upon Limited Partners' motion, granted a preliminary injunction enjoining the defendants from selling the Ballard House property.

In March 2003, a voluntary Chapter 7 petition was filed on behalf of Debtor by a limited liability company purporting to be Debtor's general partner. That petition was dismissed in March 2004, on the Limited Partners' motion for summary judgment, due to defects in the authority of the legal entity.[11] In the meantime, on Octo-

---

**10.** Bauhinia, Ltd., a Hong Kong Corporation owed by the Levines, was a preconstruction purchaser and put deposits on four units in the North Building. Debtor alleges Bauhinia transferred its interests to E–Global.

**11.** *See In re Telluride Income Growth Ltd. P'ship,* 311 B.R. 585 (Bankr.D.Colo.2004).

ber 29, 2003, E–Global, Telluride Global (the owner of Ballard House), and a third party filed an involuntary Chapter 7 petition against Debtor. The order for relief was entered on June 4, 2004. On September 1, 2004, the Chapter 7 Trustee filed a Notice of Removal of the State Court Proceeding.

During the course of the bankruptcy, Telluride Asset Resolution, LLC ("TAR"), a Levine controlled entity, entered into an Agreement with the Trustee to purchase substantially all of the Debtor's assets.[12] The assets included were the estate's claims asserted in the State Court Litigation, including the claims asserted by the Limited Partners as derivative claims, and the Debtor's rights under the EPA. The Agreement also provided that the Trustee would release the PMDOT and any and all claims of the estate against TAR, Telluride Global, E–Global, and Bauhinia. Under the Agreement reached with the Trustee, the estate would receive $250,000 cash and release of claims in the amount of $10,519,079. On March 22, 2005, the Chapter 7 Trustee filed a motion pursuant to 11 U.S.C. § 105(a) and § 363 for approval of the sale. The Limited Partners objected, asserting that the consideration to be received by the estate was insufficient because the Trustee had not properly evaluated state court claims. After four days of evidentiary hearings on the objections, the bankruptcy court on August 2, 2005, granted the motion and approved the Agreement. Findings of fact and conclusions of law were read into the record and incorporated by reference into the court's order, entitled Order Under 11 U.S.C. § 363, And Fed. R. Bankr.P.2002, 6004,

9014 And 9019(a), (A) Approving Agreement To Acquire Assets And Release Claims; And (B) Authorizing (I) Transfers Of Certain Of Debtor's Assets Free And Clear Of Liens, Claims, Interests And Encumbrances, And (II) Mutual Release of Claims (hereafter "Sale Order"). Those findings included the following: "The limited partners are neither parties to the equity participation agreement, nor beneficiaries of the purchase money deed of trust that secures obligations under it." August 2, 2005 Hearing Transcript at 15, $ll$ 13–16, in Appellants' Appendix, Vol. 3, at 774. No stay was obtained, and no appeal was filed from the Sale Order. The sale was closed on August 15, 2005.

On August 11, 2005, the Limited Partners filed a motion to alter or amend the findings of fact and conclusions of law, but only as to the foregoing one sentence finding relating to the Limited Partners' rights under the EPA and the PMDOT. Telluride Global, E–Global Development, and TAR opposed the motion. On September 7, 2005, the bankruptcy court denied the Limited Partners' motion to alter or amend without stating reasons. On September 16, 2005, the Limited Partners filed a Notice of Appeal from the September 7, 2005 judgment.[13]

### III. PRELIMINARY MOTIONS

### A. THE MOTION TO DISMISS THE APPEAL AS MOOT IS DENIED

Before addressing the merits of the appeal, the Court will address three referred motions. The first is Appellees' Motion to Dismiss the appeal as moot under the authority of § 363(m) and case law that es-

---

**12.** Parties to the Agreement also included Telluride Global, E–Global, and Bauhinia.

**13.** This is one of two related appeals in the TIGLP bankruptcy. The second is BAP Appeal No. CO–06–006, *Telluride Asset Resolu-*

*tion, LLC v. Telluride Global Dev. (In re Telluride Income Growth LP), op. filed* March 5, 2007, which was an appeal from orders entered in the adversary case initiated by the removal of the State Court Litigation.

tablishes that failure to seek a stay of an order approving a sale of assets under § 363 renders any appeal of the sale order moot. As to application of this well-established principle to this case, Appellees argue that the Limited Partners' appeal, although technically from the order denying the motion to alter or amend, is in effect a challenge to an integral part of the order of sale. In Appellees' view, the Limited Partners seek to overturn findings and conclusions made in connection with the entry of the sale order, therefore challenging the validity of the sale.[14]

The Limited Partners agree that under subsection 363(m) an appeal which challenges an order approving the sale of assets is moot, if it satisfies the following two requirements: (1) no party obtained a stay of the sale order pending appeal; (2) the validity of the sale would be impacted by reversing or modifying the authorization to sell. Under this standard, they urge that a challenge to a related provision of an order authorizing the sale of the debtor's assets affects the validity of the sale only when the related provision is integral to the sale of the estate's assets and the provision is so closely linked to the agreement governing the sale that modifying or reversing the provision would adversely affect the parties' bargained for exchange. The Limited Partners urge these conditions are not satisfied.[15] They state the "sole issue on appeal is to clarify" the bankruptcy court's ruling regarding their rights under the EPA and the PMDOT

and steadfastly disavow any intention to affect the validity of the sale. Appellants' Opening Br. at 6.

For the following reasons, the appeal is not moot. The Appellees rely upon § 363(m) as the basis for mootness. It provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

This subsection "protects the reasonable expectations of good faith third-party purchasers by preventing the overturning of a completed sale, absent a stay, and it safeguards the finality of the bankruptcy sale."[16] This purpose is achieved without "a per se rule that every appeal from an order approving a sale must be dismissed. The protection applies only if the court, upon reversing or modifying the order authorizing the sale, would affect the validity of the sale."[17] In the Tenth Circuit, when no stay is obtained, § 363(m) has been construed as having "removed only the possibility of remedies that would affect the validity of a sale to a good faith pur-

---

**14.** Appellees rely primarily upon *In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 304–05 (10th Cir. 1983) (decided under former Fed. R. Bankr.P. 805) and *Anheuser–Busch, Inc. v. Miller (In re Stadium Mgmt. Corp.)*, 895 F.2d 845, 847–48 (1st Cir.1990).

**15.** The Limited Partners rely primarily upon *Cinicola v. Scharffenberger*, 248 F.3d 110, 122 (3d Cir.2001) and *In re Trism, Inc.*, 328 F.3d 1003, 1007 (8th Cir.2003).

**16.** *In re Trism, Inc.*, 328 F.3d at 1006 (citing *In re Paulson*, 276 F.3d 389, 392 (8th Cir. 2002)).

**17.** 3 *Collier on Bankruptcy* ¶ 363.11 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2006).

chaser." [18] The Third Circuit Court of Appeals has construed § 363(m) as establishing two prerequisites for mootness: "(1) the underlying sale or lease was not stayed pending the appeal, and (2) the court, if reversing or modifying the authorization to sell or lease, would be affecting the validity of a such a sale or lease." [19]

■ Under these standards, which we apply without consideration of the distinctions, if any, arising from the fact that this appeal is from the denial of a 59(e) motion rather than the Sale Order, the appeal is not moot. The issue on appeal is whether the bankruptcy court erroneously adjudicated the Limited Partners' rights in the EPA and PMDOT. The remedy sought by the Limited Partners can be granted without affecting the validity of the sale. The policy of finality of orders of sale is not involved in this appeal.

## B. THE MOTION OF THE LIMITED PARTNERS TO TAKE JUDICIAL NOTICE OF PORTIONS OF THE BANKRUPTCY COURT RECORD IS GRANTED

The second motion is the Limited Partners' motion requesting that we take judicial notice of specified pleadings and a transcript filed in the bankruptcy court subsequent to the denial of the motion to alter or amend. These pleadings were filed in the adversary proceeding initiated by the removal of the State Court Litigation when, after the 363 sale and in reliance on the change of circumstances arising because of the approval and closing of the sale, TAR and Telluride Global moved for dissolution of the preliminary injunction and the related bond and dismissal of the adversary proceeding. The Limited Partners responded with a motion to remand. All of the documents which the Limited Partners wish for us to consider are part of the record in the related appeal, BAP Appeal No. CO–06–006, *Telluride Asset Resolution, LLC v. Telluride Global Dev. (In re Telluride Income Growth LP)*, 364 B.R. 390, 2007 WL 646123.

The Limited Partners cite as authority 28 U.S.C. § 201(b), (d), and (f). This is an erroneous citation, since there is no such statute. However, Federal Rule of Evidence 201 addresses judicial notice of adjudicative facts. The Appellees oppose the motion and move to strike portions of the Limited Partners' brief referencing the non-record documents. The Appellees rely upon the general rule that an appeal should be decided upon the record that existed at the time of the judgment on appeal and argue that, although at times the court may take judicial notice of subsequent events, this is generally limited to subsequent actions that render the appeal moot.

■ We reject the Appellees' arguments and grant the motion to take judicial notice, and deny the motion to strike. The doctrine of judicial notice is broadly construed in the Tenth Circuit. "The scope and reach of the doctrine of judicial notice has been enlarged over the years until today it includes those matters that are verifiable with certainty." [20] In the context of an appeal to the district court from contempt citations entered by the bankruptcy court, the foregoing statement was cited as authority for the proposition that when exercising review, the court may

---

**18.** *In re BCD Corp.,* 119 F.3d 852, 856 (10th Cir.1997).

**19.** *Krebs Chrysler–Plymouth, Inc. v. Valley Motors, Inc.,* 141 F.3d 490, 499 (3d Cir.1998).

**20.** *St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169, 1172 (10th Cir.1979).

"take judicial notice of the bankruptcy court's records and files, as well as those of this court resulting from the many appeals the debtors have taken from the bankruptcy...."[21] The Bankruptcy Appellate Panel of the Eight Circuit[22] has noted that the ongoing nature of bankruptcy proceedings may create situations where the reviewing court may take notice of events subsequent to the entry of the judgment from which the appeal was taken. That observation is particularly relevant in this appeal where we also have before us the related appeal in which these documents are part of the record.

In this case, subsequent events are relevant to this appeal because they illustrate the importance of the issue raised by the Limited Partners' motion to alter or amend. The portion of the bankruptcy court record subject to the motion establishes the following. On September 20, 2005, TAR was substituted for the Chapter 7 Trustee as a party plaintiff in the removed State Court Litigation. On October 5, 2005, TAR filed a "Motion to Dissolve Preliminary Injunction, Release Bond, and Dismiss Without Prejudice" ("Motion to Dismiss"). TAR alleged that it did not desire to pursue the claims of the Debtor which it acquired as part of the § 363 sale, argued that following the sale the Limited Partners had no claims, and requested the Court to dismiss the adversary "in its entirety," dissolve the preliminary injunction, and release the related bond. Motion to Dismiss at 4, ¶ 11, 13, *in* Request for Judicial Notice at 22. The Limited Partners opposed the Motion to Dismiss and filed a "Motion to Remand Proceeding to the Colorado State Court" ("Motion to Remand"). TAR and Telluride Global opposed the Motion to Remand. After full briefing, on December 14, 2005, the bankruptcy court held oral arguments on the motions and then orally stated on the record its findings of fact and conclusions of law. All claims of TAR, as successor to the Debtor, including all claims that were asserted by the Limited Partners as derivative claims were dismissed without prejudice. All the Limited Partners' direct claims and all counterclaims against the Limited Partners were remanded to the state court. Before making its rulings, the bankruptcy court made some observations concerning the 363 sale as follows:

> This Court has previously ruled in connection with the trustee's contested sale and settlement motion that all claims of the debtor, TIGLP, including all derivative claims in [the removed case], which were moved on the filing of this case—or which moved by operation of law in the filing of this case to the trustee, and were sold by the trustee to Telluride Asset Resolution, LLC.... The purchaser of these claims has now moved to dismiss them without prejudice.
>
> *I am not ruling today on—nor have I previously addressed the viability of any limited partnership nonderivative claims. This Court has not addressed direct claims of limited partners in the [removed action] or otherwise.*
>
> Prior to removal, the state court determined that—and I quote from the state court's ruling which has been filed, and was admitted in evidence in an earlier— in this case, that plaintiffs have stated a cause of action to impose and foreclose an equitable lien upon the property.
>
> I specifically note that the state court so ruled only in the context of denying a Rule 12(b)(6) motion to dismiss, and accordingly, the state court did not ad-

---

**21.** *In re Winslow,* 186 B.R. 716, 721 (D.Colo. 1995).

**22.** *In re Alexander,* 239 B.R. 911, 913 (8th Cir. BAP 1999), *aff'd,* 236 F.3d 431 (8th Cir.2001).

dress the merits of any such direct claims.

This court has specifically found on the basis of evidence presented to it and as an integral part of approving the settlement and sale of this bankruptcy estate's interest in claims, including claims under the so-called Equity Participation Agreement and the so-called Purchase Money Deed of Trust securing obligations under the Equity Participation Agreement that TIGLP and not the limited partners, was the party to the EPA and the Purchase Money Deed of Trust, and that TIGLP and not the limited partners was the beneficiary under the Purchase Money Deed of Trust.

If the limited partners wish to challenge this finding, an appeal of this Court's ruling, is or was the proper forum to mount such a challenge, collateral attack in the state court is not the proper forum. That, however, is a separate question than whether limited partners, apart from TIGLP or its successor by sale from the trustee, has separate direct claims by way of equitable liens or otherwise, against anyone other than TIGLP. Claims against TIGLP, of course, have to be filed as Proofs of Claim in this case.

December 14, 2005, Transcript at 25–27, *in* Appellants' Request for Judicial Notice at 86–88 (emphasis added). Orders memorializing the bankruptcy court's orders on the motions were filed on January 17, 2006. The Motion to Dismiss was granted to the extent that all claims held by TAR were dismissed without prejudice. The bankruptcy court abstained from ruling on whether to dissolve the preliminary injunction and related bond. As to the Motion to Remand, the bankruptcy court approved the motion as to all direct claims by the Limited Partners, if any, and any counterclaims thereto, if any.

On January 25, 2006, TAR and Telluride Global filed a notice of appeal from the two orders entered on January 17, 2006. That appeal was assigned BAP Appeal No. CO–06–006.

## IV. DISCUSSION

■ This appeal is from the bankruptcy court's denial of the Limited Partners' motion pursuant to Rule 9023, which incorporates Federal Rule 59. It provides in relevant part:

(a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues . . . (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

Fed.R.Civ.P. 59(a). The motion sought only an amendment of one sentence of the bankruptcy court's findings when granting the Trustee's 363 motion to sell the Debtor's assets, including the EPA, free and clear. The challenged statement is the following: "The limited partners are neither parties to the equity participation agreement, nor beneficiaries of the purchase money deed of trust that secures obligations under it." August 2, 2005 Hearing Transcript at 15, *ll* 13–16, *in* Appellants' Appendix, Vol. 3, at 774. The Limited Partners under Rule 9023 moved for an order determining that the bankruptcy court was not making any finding of fact or conclusion of law on whether the moving Limited Partners are or are not beneficiaries under the EPA. They asserted that determination of their rights under

the EPA was not necessary to the 363 sale and would go beyond the court's jurisdiction. They further asserted that the express language of the EPA provided that the Limited Partners are beneficiaries, that there was no evidence before the court in the 363 hearing to the contrary, and the state court had previously held that the Limited Partners have rights in the EPA independent of those of the Debtor.

In response, TAR, Telluride Global, and E–Global argued that the bankruptcy court's finding that the Limited Partners were not beneficiaries of the EPA was necessary to its ruling on the 363 motion, that the Limited Partners are not beneficiaries of the EPA under Colorado law, that testimony at the hearing on the 363 motion establishes that the Limited Partners were never intended to be third-party beneficiaries, and that the state court did not find that the Limited Partners were beneficiaries under the EPA. They asserted that "[i]n evaluating the TIGLP estate's rights under the EPA and PMDOT, the Court necessarily determined the nature and extent of the competing interests in these agreements that had been asserted by the moving limited partners." Telluride Global, E–Global, and TARs' Objection to Motion to Amend at 4, *in* Appellants' Appendix, Vol. 3, at 848.

At issue here is the term "beneficiaries." Both parties argue that this term in the bankruptcy court's order is ambiguous, and thus clouds the meaning of the sale.[23] The Limited Partners asked for reconsideration for the purpose of clarifying that the term "beneficiaries" in the challenged statement means "named beneficiaries" and is exclusive of their claimed third party beneficiary rights. In contrast, the Appellees assert that the term "beneficiaries"

is inclusive of all rights, both derivative and nonderivative. We see nothing in the record indicating that the term as used by the bankruptcy court is ambiguous. In the Sale Order the bankruptcy court stated:

> Nothing in this Order or in the Agreement shall affect the claims of any entity who is not a signatory to the Agreement against any other entity, provided however, the Agreement and transactions authorized by this Order expressly dispose of all claims of this bankruptcy estate that have previously been, or could have been, asserted *derivatively* on behalf of the Debtor."

Sale Order at 4, ¶ 10, *in* Appellants' Appendix, Vol. 3, at 790 (emphasis added). The bankruptcy court clearly did not intend to rule on the viability of the Limited Partners' asserted third party beneficiary status. Furthermore, in subsequent proceedings as observed above, the bankruptcy court stated that it had no intention of ruling or approving the sale of any alleged third party beneficiary nonderivative claims. Under the circumstances of this case, there is no abuse of discretion.

## V. CONCLUSION

For the foregoing reasons, the order denying the Limited Partners' motion pursuant to Federal Rule of Bankruptcy Procedure 9023 to alter or amend the bankruptcy court's findings of fact and conclusions of law entered when sustaining the Chapter 7 Trustee's motion to sell certain assets of the Debtor pursuant to 11 U.S.C. § 363 is affirmed.

SOMERS, Bankruptcy Judge, Concurring.

I concur in the Court's holding that the bankruptcy court did not abuse its discre-

---

**23.** We note that the Sale Order was not appealed and we may not contemplate its effect through this appeal.

**418**

tion when denying the Appellants' motion to alter or amend, but I would reach that decision for reasons other than those stated by the majority in the portion of this Opinion entitled "Discussion."